[No. G034933. Fourth Dist., Div. Three. Feb. 16, 2006.]

PERRY RODRIGUEZ et al., Plaintiffs and Respondents, v. AMERICAN TECHNOLOGIES, INC., Defendant and Appellant.

COUNSEL

Wood, Smith, Henning & Berman, Sam L. McDermott, Nicholas M. Gedo and Eve A. Brackmann for Defendant and Appellant.

Law Offices of Robert K. Scott, Robert K. Scott, John C. McCarty, Joel S. Poremba and Jeffrey C. Milman for Plaintiffs and Respondents.

OPINION

**IKOLA, J.**—American Technologies, Inc. (ATI), appeals from an order denying ATI's motion to compel arbitration and stay judicial proceedings.[1] ATI contends federal law governs the arbitration agreement and the trial court therefore lacked discretion under state arbitration law to deny the motion. We agree.

Under California law, when a party to an arbitration agreement is also a party to a pending court action with a third party, and there is a possibility of conflicting rulings on a common issue of law or fact, the court has several

---

[1] The order is appealable under Code of Civil Procedure section 1294, subdivision (a).

options. It may refuse to compel arbitration, or it may stay either the arbitration or the court proceeding pending completion of the proceedings in the other forum. (Code Civ. Proc., § 1281.2, subd. (c) (section 1281.2(c).) Under the Federal Arbitration Act, title 9 United States Code section 1 et seq. (FAA), the court's only option in these circumstances is to stay the court proceeding and compel the arbitration.

In *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376 [25 Cal.Rptr.3d 540, 107 P.3d 217] (*Cronus*), the parties to an arbitration agreement had contracted to utilize California law, but had also agreed the designation of California law would not " 'preclude application of the [FAA], if it would be applicable.' " (*Id.* at p. 380.) Under these contract provisions, our Supreme Court held section 1281.2(c) was not preempted by the FAA. *Cronus* reasoned the parties had chosen California law to govern their agreement, the procedural sections of the FAA were not "applicable," and thus the competing choice-of-law contract provisions were not in conflict. Because the parties had made a clear choice of California procedural law to govern their arbitration, *Volt Info. Sciences v. Leland Stanford Jr. U* (1989) 489 U.S. 468 [103 L.Ed.2d 488, 109 S.Ct. 1248] (*Volt*) controlled. Under *Volt*, section 1281.2(c) was not otherwise preempted by the procedural sections of the FAA.

*Cronus* explained, however, that the parties to an arbitration agreement may "*expressly* designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law." (*Cronus, supra*, 35 Cal.4th at p. 394.) We hold the parties in the instant case did just that, and accordingly the court erred when it denied ATI's petition to compel arbitration.

## FACTS

In a single lawsuit, plaintiffs Perry Rodriguez and Kathy Rodriquez sued ATI for professional negligence, and several insurance companies for breach of contract and breach of the duty of good faith and fair dealing. The professional negligence cause of action asserted ATI was hired by a defendant insurance company to "perform remediation and repairs to the insured premises," but ATI negligently performed its duties. Plaintiffs asserted they were forced to sell their house on an "as is" basis for a price "far below its market value" and to dispose of "[u]nsalvageable items" of personal property. Kathy Rodriguez claimed to have suffered illness and personal injury due to "exposure to mold and mold contamination." The complaint also alleged the insurance companies refused to pay adequate benefits for water damage and mold contamination under all-risk policies covering plaintiffs' home and personal property.

ATI performed the remediation and repair work on plaintiffs' home pursuant to a Work Proposal and Authorization contract which, inter alia, included the following arbitration clause: "**ARBITRATION**: Pursuant to the Federal Arbitration Act, any controversy or claim arising [out] of or related to this Agreement or the breach of any provision thereof shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect, unless the parties mutually agree otherwise." Although the contract contains references to certain provisions of California law regarding ATI's lien rights, it contains no express choice-of-law provision designating California law generally, and the American Arbitration Association's Construction Industry Arbitration Rules are silent as to the procedure to be followed when related litigation involves third parties.

Pursuant to Code of Civil Procedure section 1280 et seq.,[2] ATI petitioned to compel arbitration and stay the judicial proceeding. Plaintiffs opposed the motion, relying, inter alia, on section 1281.2(c), and arguing "a motion to compel arbitration should be denied when a party to an arbitration agreement is also a party to litigation with a third party that: (1) arises out of the same transaction or series of related transactions, and (2) presents a possibility of conflicting rulings on a common issue of law or fact." Plaintiffs contended arbitration against ATI and litigation against the insurers could result in inconsistent rulings on common issues of law and fact. ATI responded that the arbitration agreement was governed by the FAA, and therefore section 1281.2(c) did not apply. The court denied the petition based on section 1281.2(c) and *Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479 [17 Cal.Rptr.3d 88] (*Whaley*).[3]

## DISCUSSION

*Because the Arbitration Agreement Is Governed by Federal Law, Arbitration Cannot be Stayed Under Section 1281.2(c)*

ATI contends the parties expressly agreed the FAA would govern arbitration of disputes under the contract. ATI concludes section 1281.2(c) is inapplicable to the contract and the court therefore had no discretion to deny the petition to compel arbitration. For reasons we explain, we agree.

A court's order denying arbitration under section 1281.2(c) is "ordinarily reviewed for abuse of discretion." (*Whaley, supra,* 121 Cal.App.4th at p. 484.)

---

[2] Code of Civil Procedure section 1280 et seq. is hereafter referred to as the California Arbitration Act.

[3] The court's reliance on *Whaley, supra,* 121 Cal.App.4th 479 was misplaced because no party in *Whaley* contended the FAA preempts section 1281.2(c). (*Whaley,* at p. 484, fn. 3.)

But the issue presented here—whether federal law governs the arbitration agreement—is a question of law involving interpretation of statutes and the contract (with no extrinsic evidence). We therefore apply a de novo standard of review. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865–866 [44 Cal.Rptr. 767, 402 P.2d 839].)

### 1. *The FAA and Section 1281.2(c)*

■ The FAA applies to arbitration clauses in contracts involving interstate commerce[4] and "was designed 'to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate,' [citation], and to place such agreements ' "upon the same footing as other contracts." ' " (*Volt, supra,* 489 U.S. at p. 478.) "However, the FAA's purpose is not to provide special status for arbitration agreements, but only 'to make arbitration agreements as enforceable as other contracts . . . .' " (*Cronus, supra,* 35 Cal.4th 376, 384.)

■ Section 2 of the FAA provides that a written arbitration clause "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." ■ Section 3 of the FAA mandates that, if suit is brought in a court "of the United States" upon an issue "referable to arbitration," the court must, upon a party's application, stay the judicial proceeding until the arbitration is completed.

■ Code of Civil Procedure section 1281, echoing the FAA's language and its policy favoring arbitration, likewise provides that a written arbitration agreement "is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Unlike the federal statute, however, California law does not require a court to stay judicial proceedings pending the completion of arbitration in all cases. Under section 1281.2(c), if a party to an arbitration agreement is also a party to related litigation with a third party that creates the risk of conflicting rulings on a common issue of law or fact, "the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding." (*Ibid.*) ■ Thus, while the FAA does not "deal with the special practical problems that arise in multiparty contractual disputes when some or all of the contracts at issue include agreements to arbitrate[,] California has taken the lead in fashioning a

---

[4] Plaintiffs do not dispute that the subject contract involves interstate commerce.

legislative response to this problem, by giving courts authority to consolidate or stay arbitration proceedings . . . in order to minimize the potential for contradictory judgments." (*Volt, supra,* 489 U.S. at p. 476, fn. 5.)

### 2. Volt, Mount Diablo, *and* Cronus

ATI cites *Volt, supra,* 489 U.S. 468, *Mount Diablo Medical Center v. Health Net of California, Inc.* (2002) 101 Cal.App.4th 711 [124 Cal.Rptr.2d 607] (*Mount Diablo*), and *Cronus, supra,* 35 Cal.4th 376, for the proposition that when the parties have expressly chosen the FAA to govern their arbitration, and they have not designated any competing state law, the procedural provisions of the FAA preempt California arbitration law and render section 1281.2(c) inapplicable.

■ In *Volt, supra,* 489 U.S. 468, the contract "contained a choice-of-law clause providing that '[t]he Contract shall be governed by the law of the place where the Project is located' " (*id.* at p. 470), i.e. California, and an arbitration clause stating claims were to "be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association." (*Id.* at p. 470, fn. 1.) In litigation involving the parties to the contract *and* third parties, a California trial court denied a motion to compel arbitration and stayed the arbitration proceedings pursuant to section 1281.2(c). (*Volt,* at p. 471.) The California Court of Appeal affirmed, holding "that by specifying that their contract would be governed by [California law], the parties had incorporated the California rules of arbitration, including § 1281.2(c), into their arbitration agreement." (*Id.* at p. 472.) The United States Supreme Court affirmed the California Court of Appeal. The Supreme Court held "application of the California statute is not preempted by the [FAA] in a case where the parties have agreed that their arbitration agreement will be governed by the law of California."[5] (*Id.* at p. 470.) The Supreme Court reasoned: "Just as [parties] may limit by contract the issues which they will arbitrate [citation], so too may they specify by contract the rules under which that arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the [FAA] would otherwise permit it to go forward." (*Id.* at p. 479.)

---

[5] The Supreme Court noted "the interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review." But before reaching the preemption issue, the Supreme Court nevertheless considered and rejected appellant's arguments that the Court of Appeal's interpretation of the choice-of-law clause should be set aside, thereby proceeding on the assumption that the general choice-of-law clause in the contract would incorporate the provisions of section 1281.2(c). (*Volt, supra,* 489 U.S. at pp. 474–476.)

In *Mount Diablo, supra,* 101 Cal.App.4th 711, the contract included a choice-of-law clause specifying the agreement's " 'validity, construction, interpretation and enforcement' " (*id.* at p. 716) were governed by California law, and an arbitration provision requiring controversies were to be resolved by "arbitration under the appropriate rules of the American Arbitration Association." (*Id.* at p. 716, fn. 4.) In a lawsuit involving the parties to the contract and third parties, the trial court denied a motion to compel arbitration, relying on *Volt, supra,* 489 U.S. 468 and section 1281.2(c). (*Mount Diablo,* at pp. 715–716.) Affirming the trial court's ruling, the Court of Appeal applied a two-step inquiry asking (1) whether the choice-of-law's language was "broad enough to include state law on the subject of arbitrability," and if so, (2) whether section 1281.2(c) reflected "a hostility to the enforcement of arbitration agreements that the FAA was designed to overcome." (*Mount Diablo,* at p. 724.) The *Mount Diablo* court answered the first question in the affirmative, interpreting the choice-of-law provision's "explicit reference to enforcement [to] reasonably [include] such matters as whether proceedings to enforce the agreement shall occur in court or before an arbitrator." (*Id.* at p. 722.) The court then concluded that section 1281.2(c) did not contravene the FAA's policy favoring enforcement of arbitration agreements: "Section 1281.2(c) is not a provision designed to limit the rights of parties who choose to arbitrate or otherwise to discourage the use of arbitration. Rather, it is part of California's statutory scheme designed to enforce the parties' arbitration agreements, as the FAA requires. Section 1281.2(c) addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement. The California provision giving the court discretion not to enforce the arbitration agreement under such circumstances—in order to avoid potential inconsistency in outcome as well as duplication of effort—does not contravene the letter or the spirit of the FAA."[6] (*Mount Diablo,* at p. 726.)

Finally, *Cronus, supra,* 35 Cal.4th 376, involved several contracts whose choice-of-law clauses stated the agreements would be " 'construed and enforced' " in accordance with California law, " 'without giving effect to the conflict of laws provisions thereof.' " (*Id.* at p. 381.) But the contracts' arbitration provisions appeared to limit or condition the choice of California law, specifying that the " 'designation of a situs or specifically a governing law' " for the contracts did not " 'preclude application of the [FAA], if it would be applicable.' " (*Id.* at p. 381, fn. 3.) The arbitration clauses further

---

[6] In arriving at its conclusion, the *Mount Diablo* court distinguished *Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52 [131 L.Ed.2d 76, 115 S.Ct. 1212] (*Mastrobuono*). In *Mastrobuono,* the United States Supreme Court interpreted a general choice-of-law clause specifying the contract " 'shall be governed by the laws of the State of New York' " (*id.* at p. 53) as encompassing only the "substantive principles that New York courts would apply, but [not the] special rules limiting the authority of arbitrators" (*id.* at p. 64) such as New York's rule that allowed courts, but not arbitrators, to award punitive damages.

stated arbitration would be conducted under the " 'Rules for Commercial Arbitration of the American Arbitration Association.' " (*Ibid.*) In litigation (including cross-complaints) involving the parties to the contracts and third parties, the trial court denied a motion to compel arbitration and stayed the arbitration proceedings under section 1281.2(c). (*Cronus,* at pp. 381–382.)

The California Supreme Court affirmed, employing a two-step analysis similar to that employed in *Mount Diablo.* "Under United States Supreme Court jurisprudence, we examine the language of the contract to determine whether the parties intended to apply the FAA to the exclusion of California procedural law and, if any ambiguity exists, to determine whether section 1281.2(c) conflicts with or frustrates the objectives of the FAA." (*Cronus, supra,* 35 Cal.4th at p. 383.) Examining the contract language, the court and parties agreed the scope of the choice-of-law clause incorporating California rules was " 'limited by applicable provisions of the FAA' and [was] nullified 'only where the FAA's provisions are inconsistent with the [California Arbitration Act].' " (*Id.* at p. 387.) Having found an ambiguity in the contract as to the parties' intentions, the court proceeded to the second prong of the inquiry and examined whether section 1281.2(c) conflicts with the FAA.

*Cronus* analyzed the FAA's substantive and procedural provisions separately, and summarized the FAA's *procedural* sections as follows: "Section 3 of the FAA concerns the enforcement of arbitration agreements in a pending lawsuit. It requires the 'courts of the United States' to grant a party's request for a stay of litigation on an arbitrable issue, pending completion of the arbitration. [Citation.] Section 4 of the FAA concerns petitions for enforcement of an arbitration agreement where one party refuses to arbitrate. It requires a 'United States district court' to entertain an application to compel arbitration." (*Cronus, supra,* 35 Cal.4th at p. 388, fn. omitted.)

▇ Based on the language of the statutes and legislative history, the *Cronus* court concluded the FAA's procedural provisions generally do *not* apply to state court proceedings. Thus, the court implicitly concluded sections 3 and 4 of the FAA were not "applicable" within the meaning of the contract's arbitration clause. The court's conclusion was bolstered by the statement of the United States Supreme Court in *Volt* that " '[w]hile we have held the FAA's 'substantive' provisions—§§ 1 and 2—are applicable in state as well as federal court [citation], we have never held that §§ 3 and 4, which by their terms appear to apply only to proceedings in federal court [citations], are nonetheless applicable in state court.' " (*Cronus, supra,* 35 Cal.4th at p. 389.) *Cronus* noted that in *Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681 [134 L.Ed.2d 902, 116 S.Ct. 1652], the United States Supreme Court had reaffirmed "*Volt's* distinction between the procedural and substantive aspects of the FAA [by describing] section 1281.2(c) as 'determin[ing] only the

efficient order of proceedings [and] not affect[ing] the enforceability of the arbitration agreement itself.' " (*Cronus*, at p. 390.)

■ Turning to the FAA's substantive provisions, *Cronus* addressed the question whether section 1281.2(c)'s "application would undermine and frustrate . . . section 2's policy of enforceability of arbitration agreements." (*Cronus, supra*, 35 Cal.4th at p. 391.) *Cronus* quoted *Volt's* conclusion that the California arbitration rules " 'generally foster the federal policy favoring arbitration' " (*Cronus*, at p. 392) and " '*are manifestly designed to encourage resort to the arbitral process.*' " (*Id.* at p. 391.) Distinguishing *Mastrobuono, supra*, 514 U.S. 52, the *Cronus* court stated "section 1281.2(c) is *not* a special rule limiting the authority of arbitrators," but is instead "an evenhanded law that allows the trial court to stay arbitration proceedings while the concurrent lawsuit proceeds *or* stay the lawsuit while arbitration proceeds to avoid conflicting rulings on common issues of fact and law amongst interrelated parties." (*Cronus*, at p. 393.) Having found that section 1281.2(c) does *not* conflict with the FAA's applicable procedural and substantive rules, the *Cronus* court concluded: "Thus, we need not construe any ambiguities as to the scope of the arbitration provision against the application of section 1281.2(c)." (*Cronus*, at p. 393.)

But then the *Cronus* court added this caveat: "[P]arties to an arbitration agreement [may] *expressly* designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law." (*Cronus, supra*, 35 Cal.4th at p. 394.)

### 3. *The Rodriguez/ATI Contract*

As noted at the outset of this opinion, the parties to the arbitration provision here at issue agreed to arbitrate claims arising out of the contract, "[p]ursuant to the Federal Arbitration Act," and "in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association." The contract contains no overarching choice-of-law provision, although it references a number of specific California statutes relating to liens and home solicitation contracts.[7] The American Arbitration Association's Construction Industry Arbitration Rules are silent as to the procedure to be followed when related litigation involves third parties.

■ As instructed by *Cronus*, "we examine the language of the contract to determine whether the parties intended to apply the FAA to the exclusion

---

[7] The contract makes reference to Civil Code sections 3051 (liens on personal property), 1689.5 (defining, inter alia, a "[h]ome solicitation contract"), 1689.13 (excluding certain provisions of the Civil Code under specified circumstances), 3262 (release of mechanic's lien), and former section 7018.5 of the Business and Professions Code (notice of mechanics lien rights, now found in Bus. & Prof. Code, § 7159).

of California procedural law." (*Cronus, supra*, 35 Cal.4th at p. 383.) The contract specifies that claims shall be arbitrated "pursuant to the FAA." In common understanding, the phrase "pursuant to" means "in conformance to or agreement with" and "according to." (Webster's 3d New Internat. Dict. (2002) p. 1848.) Plainly, the language of the contract requires the parties to arbitrate "in conformance to" and "agreement with" the FAA. There is *no* other contract provision suggesting the parties intended to incorporate California arbitration law, nor is there any language suggesting the parties intended to arbitrate "in conformance to" some provisions of the FAA but not others. The phrase "pursuant to the FAA" is broad and unconditional, unlike the *Cronus* clause, which deferred to the contract's California choice-of-law provision by invoking only "applicable" provisions of the FAA. (*Cronus, supra*, 35 Cal.4th at p. 381.)

 Thus, there is no ambiguity regarding the parties' intent. They adopted the FAA—all of it—to govern their arbitration. The FAA controls, including section 3 which requires the court to stay the judicial proceeding and compel arbitration. Although section 3 may not generally apply to state courts, here the parties did as *Cronus* suggested they could: They expressly designated *their* arbitration proceeding "should move forward under the FAA's procedural provisions rather than under state procedural law." (*Cronus, supra*, 35 Cal.4th at p. 394.)

Thus, the court erred by denying ATI's motion to compel arbitration and stay the court proceeding as to plaintiffs and ATI. In accordance with the agreement of the parties, section 3 of the FAA required the court to compel arbitration between plaintiffs and ATI and to stay the court proceeding with respect to their disputes with each other. While we may question the wisdom of the parties' choice, and decry the potential for inefficiency, delay, and conflicting rulings, the parties were free to choose their arbitration rules. The court will not rewrite their contract.

We note in this regard, although the contract did not invoke California arbitration law, such law remains applicable to the pending court action as to the defendant insurance companies, which are *not* subject to arbitration under the FAA. Thus, in order to avoid conflicting rulings, on remand the court may consider whether to exercise its discretion under section 1281.2(c) to stay the action as to the insurance companies pending the outcome of the arbitration. Alternatively, if *any* party to the court proceeding moves to stay the litigation pursuant to Code of Civil Procedure section 1281.4, the court must order a stay, except to the extent that arbitrable issues are severable.[8] (See *Marcus v.*

---

[8] Code of Civil Procedure section 1281.4 provides in relevant part: "If a court of competent jurisdiction, whether in this State or not, has ordered arbitration of a controversy which is an issue involved in an action . . . pending before a court of this State, the court in which such

*Superior Court* (1977) 75 Cal.App.3d 204, 209 [141 Cal.Rptr. 890] [party moving to stay action under section 1281.4 need not be a party to arbitration agreement].) Thus, the insurance company defendants may move to stay the action under section 1281.4.

### The Parties Designated the Arbitrator to Determine the Scope of the Arbitration

The contract's arbitration clause applies to claims "arising [out] of or related to" the agreement. Plaintiffs contend two of their grievances fall outside the clause's scope—specifically their claims ATI offered to buy their home "as-is" and made a "low-ball" bid to perform new work.

■ Although the scope of an arbitration clause is generally a question for judicial determination, the parties may, by clear and unmistakable agreement, elect to have the arbitrator, rather than the court, decide which grievances are arbitrable. (*AT & T Technologies v. Communications Workers* (1986) 475 U.S. 643, 649 [89 L.Ed.2d 648, 106 S.Ct. 1415].) Here, the parties clearly and unmistakably agreed to have the arbitrator determine the scope of the arbitration clause. The contract mandates arbitration in accordance with the American Arbitration Association's Construction Industry Rules. Rule 8(a) of those rules specifies the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, *scope* or validity of the arbitration agreement." (Italics added.) By incorporating rule 8(a) into their agreement, the parties clearly evidenced their intention to accord the arbitrator the authority to determine issues of arbitrability. (See *Shaw Group Inc. v. Triplefine Intern. Corp.* (2d Cir. 2003) 322 F.3d 115, 124–125.) Thus, any issues concerning the scope of the arbitration clause should be determined by the arbitrator in the arbitration proceeding.

### The Arbitration Clause Was Not Inconspicuous

Plaintiffs also contend the arbitration clause was "placed inconspicuously on the back of the form." Relying on *Windsor Mills, Inc. v. Collins & Aikman Corp.* (1972) 25 Cal.App.3d 987 [101 Cal.Rptr. 347] (*Windsor Mills*), they argue "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, *contained in a document whose contractual nature is not obvious*." (*Id.* at p. 993, italics added.) *Windsor Mills* involved printed forms entitled "Acknowledgment of Order" that were sent to the buyer as each order of

action . . . is pending shall, upon motion of a party to such action . . . , stay the action . . . until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies. [¶] . . . [¶] If the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only."

merchandise was received and did not require the buyer's signature. (*Id.* at pp. 989–990.) The court found the "forms were not contractual in form" (*id.* at p. 996), and thus not binding on the buyer. It is nevertheless true, however, that "ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms." (*Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc.* (2001) 89 Cal.App.4th 1042, 1049 [107 Cal.Rptr.2d 645].) "An exception to this general rule exists when the writing does not appear to be a contract and the terms are not called to the attention of the recipient." (*Id.* at pp. 1049–1050 [citing *Windsor Mills* as an example].)

Here, the agreement is titled "WORK PROPOSAL AND AUTHORIZATION," and is signed by ATI's representative and by Kathy Rodriguez underneath a line stating "Accepted by Client." The document has provisions labeled "CONTRACT TIME" and "CONTRACT SUM," and it looks like a contract. Clearly stated on the front page, above the signature lines, is the clause: "REVERSE SIDE TERMS: The Terms and conditions on the reverse side of this Proposal are incorporated herein by reference." The arbitration clause on the reverse side is labeled with the heading, "ARBITRATION," in bold capital letters. We conclude ATI and at least Kathy Rodriguez assented to the contract and its arbitration clause.

*Whether Perry Rodriguez Is Bound by His Wife's Execution of the Arbitration Agreement Is a Remaining Issue for the Trial Court*

Although the contract identified both Perry and Kathy Rodriguez as "clients," only Kathy Rodriguez signed the agreement. Plaintiffs therefore assert Perry Rodriguez is not bound to arbitrate the dispute. ATI, on the other hand, contends Perry Rodriguez is bound by the arbitration clause under theories of actual or ostensible agency, ratification, and/or third party beneficiary. In light of the trial court's ruling on the application of section 1281.2(c), it did not make findings on these issues. Because the court below has not yet decided whether Perry Rodriguez is bound by the contract, including its arbitration clause, and because "the existence of agency is generally a question of fact" (*Brokaw v. Black-Foxe Military Institute* (1951) 37 Cal.2d 274, 278 [231 P.2d 816]), we remand this issue to the trial court for its determination.

## DISPOSITION

The order denying ATI's motion to compel arbitration and stay judicial proceedings is reversed and the matter remanded for the trial court to determine whether Perry Rodriguez is bound by the arbitration agreement.

The court is directed to enter a new order granting the motion to compel arbitration of plaintiff Kathy Rodriquez's claims against ATI and to stay judicial proceedings as to those claims. If the court determines Perry Rodriguez is bound by the arbitration agreement, it shall enter the same order as to his claims. If the court determines Perry Rodriguez is not bound by the arbitration agreement, it shall reinstate the order denying arbitration as to his claims. ATI shall recover its costs on appeal.

O'Leary, Acting P. J., and Moore, J., concurred.