[No. B237475. Second Dist., Div. Six. Oct. 9, 2012.]

IRENE MASTICK, Plaintiff and Respondent, v.
TD AMERITRADE, INC., et al., Defendants and Appellants.

[No. B238070. Second Dist., Div. Six. Oct. 9, 2012.]

IRENE MASTICK, Plaintiff and Respondent, v.
OAKWOOD CAPITAL MANAGEMENT, LLC, et al., Defendants and
Appellants.

Counsel

Law Offices of Jeffrey A. Feldman, Jeffrey A. Feldman; Law Offices of Robert S. Patterson and Robert S. Patterson for Plaintiff and Respondent.

Jones, Bell, Abbott, Fleming & Fitzgerald and William M. Turner for Defendant and Appellant TD Ameritrade, Inc.

Baute Crochetiere & Maloney, Mark D. Baute and David P. Crochetiere for Defendant and Appellant Oakwood Capital Management.

---

OPINION

**GILBERT, P. J.**—When federal and state laws involve the same subject, their provisions may conflict. The doctrine of federal preemption may resolve the conflict. To resolve such a conflict here, we must answer the question: Does federal or state law apply? We answer with the common exasperating response often heard from judges and lawyers. It all depends.

In these related appeals, the Federal Arbitration Act (FAA) (9 U.S.C. §§ 1–16) conflicts with the California Arbitration Act (CAA) (Code Civ. Proc., § 1280 et seq.)[1] in one case but not the other. Why? As we will explain . . . it all depends.

Irene Mastick brings this professional negligence action against Oakwood Capital Management, LLC, and its officers, Elliott Hollingsworth and Bruce Mandel (collectively Oakwood) and TD Ameritrade, Inc., and Paul Sullivan (collectively TD Ameritrade). Oakwood and TD Ameritrade appeal an order denying their petitions to compel arbitration. (§ 1281.2, subd. (c).) We conclude that the FAA does not preempt application of the CAA to an arbitration agreement in which the parties have agreed to be governed by California law. The FAA does preempt state law, however, when the parties have not so agreed. We reverse in part and affirm in part.

### FACTUAL AND PROCEDURAL BACKGROUND

Mastick brought this action in superior court against her accountant, Michael E. Safris and M.E. Safris & Company, LLC (collectively Safris). She alleged that Safris, along with representatives of Oakwood and TD Ameritrade, met with her in her home in November 2008. Safris advised her

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

to surrender her whole life insurance policies for cash value and invest the proceeds with Oakwood. She alleged that Safris gave her bad advice about ensuing tax consequences.

Safris, a citizen of New Jersey, removed the case to federal court. Mastick amended the complaint to add Oakwood and TD Ameritrade. In federal court, Oakwood and TD Ameritrade petitioned to compel arbitration. The federal court remanded the case to superior court for lack of diversity, and denied the petitions without prejudice.

Upon remand, Oakwood and TD Ameritrade filed petitions to compel arbitration. Oakwood sought to compel arbitration before the American Arbitration Association (AAA) and to dismiss Mastick's action. TD Ameritrade sought to compel arbitration before the Financial Industry Regulatory Authority (FINRA) and to stay Mastick's action.

The investment management agreements between Oakwood and Mastick provide that the parties will be governed by California law and disputes between them will be resolved through arbitration in accordance with the AAA rules. The client agreements between TD Ameritrade and Mastick provide that the parties will be governed by Nebraska law and disputes between them will be resolved through arbitration in accordance with the FINRA rules.

The trial court denied both petitions because of the risk of inconsistent rulings. (§ 1281.2, subd. (c).) It found that the CAA was not preempted by the FAA because "the parties have agreed that their arbitration agreement[s] will be governed by state law." The court found that Mastick's claims against Safris, Oakwood, and TD Ameritrade arose out of the same transaction or series of transactions, and that the arbitration agreements, if enforced, would require Mastick to litigate her claims in three different forums. The court found that "the present case is exactly the situation Section 1281.2[, subdivision] (c) was designed to deal with, where there is the potential for conflicting rulings because some of the defendants have an arbitration agreement with plaintiff and others do not. The interest of justice simply would not be served by having three actions proceeding concurrently, or one after the other." The court declined to stay any part of the action because to do so "would not resolve the potential for inconsistent rulings in the different forums."

## DISCUSSION

We ordinarily review a court's order denying arbitration under section 1281.2, subdivision (c) for abuse of discretion. (*Rodriguez v. American*

*Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1116 [39 Cal.Rptr.3d 437].) But the question whether the CAA applies to an arbitration agreement "is a question of law involving interpretation of statutes and the contract (with no extrinsic evidence). We therefore apply a de novo standard of review." (136 Cal.App.4th at p. 1117.)

The trial court's ruling is reasonable, fair, and consistent with common sense. If only the law supported the court's reasonable and balanced approach. Unfortunately, it does not. Here, intersection between federal and state law does not permit us to reach this laudable goal.

■ The FAA governs arbitration provisions in contracts that involve interstate commerce. (9 U.S.C. § 1.) Security brokerage agreements are governed by the FAA. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 402–403, 405 [58 Cal.Rptr.2d 875, 926 P.2d 1061].) Mastick does not dispute that her agreements with Oakwood and TD Ameritrade involve interstate commerce. ■ When the FAA applies, it preempts any contrary state law and is binding on state as well as federal courts. (*Southland Corp. v. Keating* (1984) 465 U.S. 1, 10–16 [79 L.Ed.2d 1, 104 S.Ct. 852]; *Rosenthal*, at p. 406.) The FAA requires courts to enforce arbitration provisions. (9 U.S.C. § 2.) It does not authorize courts to stay arbitration pending resolution of litigation, or to refuse to enforce a valid arbitration provision to avoid duplicative proceedings or conflicting rulings. (9 U.S.C. § 4 [the court shall make an order directing the parties to proceed to arbitration].) The misfortune of deciding related disputes in different forums occurs because the FAA "requires piecemeal resolution when necessary to give effect to an arbitration agreement." (*Moses H. Cone Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 20 [74 L.Ed.2d 765, 103 S.Ct. 927], italics omitted.)

In *C. Itoh & Co. v. Jordan Internat. Co.* (1977) 552 F.2d 1228, for example, the district court has no discretion to refuse to enforce an arbitration provision on the ground that sound judicial administration requires resolution of the entire lawsuit in a single forum when disputes between some parties are not arbitrable. Under the FAA, the decision whether to stay litigation pending arbitration may be based only on issues relating to the making and performance of the agreement to arbitrate. (552 F.2d at p. 1231.) "Considerations of judicial economy bear no relation to 'the making and performance of an agreement to arbitrate,' and to permit a district court to deny a stay pending arbitration based on such discretionary considerations would, in our opinion, frustrate the strong federal policy in favor of arbitration which is expressed in the Federal Arbitration Act as interpreted by the Supreme Court." (*Ibid.*)

■ Nevertheless, contracting parties may agree that the FAA will not govern their arbitration even if the contract involves interstate commerce. (*Volt*

*Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 470 [103 L.Ed.2d 488, 109 S.Ct. 1248] (*Volt*).) And if the parties agree that California law "govern[s]" the contract, the CAA applies. (*Volt*, at p. 470; *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 387 [25 Cal.Rptr.3d 540, 107 P.3d 217] (*Cronus*).)

■ Pursuant to the CAA, the trial court may "refuse to enforce" an arbitration provision if a contracting party is involved in related litigation with a third party that creates the risk of conflicting rulings on a common issue of law or fact. (§ 1281.2, subd. (c).) This happened in *Cronus*. When the parties have agreed to be governed by California law, section 1281.2, subdivision (c) does not conflict with the FAA or frustrate its objectives. The FAA simply requires courts to enforce arbitration provisions in accordance with the terms in the agreement. (9 U.S.C. § 4; *Volt, supra*, 489 U.S. at p. 478.)

The Oakwood agreements contain California choice-of-law provisions. The TD Ameritrade agreements are governed by Nebraska law.

## *I. Oakwood*

The California choice-of-law provisions in the Oakwood agreements authorize the court to stay or refuse to enforce arbitration of Mastick's claims against Oakwood to avoid duplicative proceedings and conflicting rulings pursuant to section 1281.2, subdivision (c). Mastick signed two investment management agreements with Oakwood which provided that the agreements would be "governed by the laws of the State of California," and that disputes would be resolved by arbitration "in accordance with the Commercial Arbitration Rules of, and administered by, the American Arbitration Association."

Oakwood contends that a general California choice-of-law provision does not invoke the specific provisions of the CAA, particularly when the parties agreed that arbitration would proceed under AAA arbitration rules. The authorities do not support Oakwood's contention. In *Cronus*, the CAA was invoked when the parties agreed to be "governed by the laws of the State of California" (*Cronus, supra*, 35 Cal.4th at p. 381) and that arbitration would proceed " 'in accordance with the then existing Rules for Commercial Arbitration of the American Arbitration Association ("AAA").' " (*Id.* at p. 381, fn. 3.) Similarly, in *Volt*, the CAA was invoked when the parties agreed to be governed by the law of the place where the project was located and agreed that arbitration would proceed " 'in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association . . . .' " (*Volt, supra*, 489 U.S. at p. 470, fn. 1.)

■ Oakwood relies on *Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 63–64 [131 L.Ed.2d 76, 115 S.Ct. 1212], and *Wolsey, Ltd. v. Foodmaker, Inc.* (9th Cir. 1998) 144 F.3d 1205, 1213 for its argument that a general choice-of-law provision does not operate to invoke a state's arbitration rules such as section 1281.2, subdivision (c). The California Supreme Court has rejected this interpretation. (*Cronus, supra*, 35 Cal.4th at p. 393.) In *Mastrobuono*, a general New York choice-of-law provision did not evidence an agreement to apply "special rules limiting the authority of arbitrators" to award punitive damages. (*Mastrobuono*, at pp. 53, 64.) But "[u]nlike the . . . rule addressed in *Mastrobuono*, section 1281.2[, subdivision] (c) is not a special rule limiting the authority of arbitrators." (*Cronus*, at p. 393, italics omitted.) Oakwood and Mastick's choice of California law authorizes the trial court to apply section 1281.2, subdivision (c) to their arbitration agreement.

Section 1281.2, subdivision (c) gives the trial court discretion to refuse to enforce an arbitration agreement if a party to the agreement was also a party to related litigation with a third party that creates the risk of conflicting rulings on a common issue of law or fact.[2] It is undisputed that Safris, a party to this litigation, is not a party to any arbitration agreement with Mastick.

The trial court did not abuse its discretion when it found that enforcement of Mastick's agreement to arbitrate claims against Oakwood would create a risk of conflicting rulings. Mastick's claims against each defendant are based on a single injury arising from advice given at a single meeting concerning a single transaction. As the federal district court aptly observed when it approved Oakwood's joinder, "If the actions proceed separately, there is a risk that the proceedings may come to inconsistent rulings—one proceeding could hold that Plaintiff was careless in her actions, and the other proceeding could hold that there was misconduct but that the parties in the other action were more culpable. This would risk duplicative proceedings, which would be inefficient for the courts, costly for the parties, and, to the extent they could reach inconsistent results, contrary to the interests of justice."

---

[2] Section 1281.2, subdivision (c) reads in part, "If the court determines that a party to the arbitration is also a party to litigation in a pending court action or special proceeding with a third party as set forth under subdivision (c) herein, the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding."

## II. TD Ameritrade

The TD Ameritrade agreements do not contain a California choice-of-law provision. Mastick signed two client agreements with TD Ameritrade, one as trustee and one in her individual capacity. Each provides that the agreements would "be governed by the laws of the State of Nebraska," and that disputes would be resolved by arbitration "in accordance with the rules of FINRA."

■ Like the FAA, Nebraska's Uniform Arbitration Act (Neb. Rev. Stat. §§ 25-2601 to 25-2622) does not authorize a court to stay arbitration or refuse to enforce an arbitration provision to avoid duplicative proceedings or conflicting rulings. (*Id.*, § 25-2603(a) ["On application of a party showing an agreement . . . and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration . . . ."].) The court must stay issues that are subject to arbitration pending arbitration. (*Id.*, § 25-2603(d) ["Any action . . . involving an issue subject to arbitration shall be stayed . . . or, if the issue is severable, the stay may be made with respect thereto only."].) Therefore, the court must stay the action between Mastick and TD Ameritrade and order Mastick and TD Ameritrade to arbitrate their disputes.

Mastick contends that the language of the two TD Ameritrade agreements conflict, rendering the Nebraska choice-of-law provision ambiguous and ineffective. We disagree. The agreement Mastick signed in her individual capacity provides, "This Agreement will be governed by the laws of the State of Nebraska but not its *conflicts of law provisions*." "I hereby consent to the *jurisdiction of and venue within* the State of Nebraska." (Italics added.) The agreement Mastick signed as trustee provides in the final paragraph, "This agreement shall be governed by the laws of the State of Nebraska," with no language regarding conflicts of law, jurisdiction, or venue. In the trustee agreement, Mastick also consents to Nebraska venue and jurisdiction for "disputes arising out of or relating to use of the Web sites, Content, the Service, and/or the Information." That the trustee agreement is silent on conflicts of law does not render the choice of Nebraska law ambiguous. Nor does the agreement demonstrate an intention to be governed by California law. Even if the choice of Nebraska law were in doubt, the FAA would apply to this securities brokerage agreement, and the result would be the same. The absence of California choice-of-law provisions in the TD Ameritrade agreements precludes application of section 1281.2, subdivision (c).

■ Mastick contends for the first time on appeal that her agreement with TD Ameritrade should not be enforced because it is unconscionable. Mastick's opposition to TD Ameritrade's petition to compel arbitration does not mention unconscionability and she did not raise the issue at the hearing on the petitions. She has forfeited the contention because she did not raise it in the trial court.

(*Koehl v. Verio, Inc.* (2006) 142 Cal.App.4th 1313, 1339 [48 Cal.Rptr.3d 749] [issue of unconscionability must be put before the trial court or it will be waived].)

██  Mastick contends that the Nebraska choice-of-law provision is ineffective because the arbitration provision does not comply with a Nebraska notice requirement. Nebraska Revised Statute section 25-2602.02, part of the Nebraska Uniform Arbitration Act, requires that an agreement that contains an arbitration agreement include this statement: "THIS CONTRACT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." But state law arbitration notice requirements are unenforceable in contracts that are governed by the FAA because they are contrary to its provisions. (*Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687 [134 L.Ed.2d 902, 116 S.Ct. 1652]; *Aramark Uniform & Career Apparel, Inc. v. Hunan, Inc.* (2008) 276 Neb. 700, 708 [757 N.W.2d 205, 211] ["courts may not invalidate arbitration agreements governed by the FAA under state laws applicable only to arbitration provisions" (italics omitted)].)

██  Mastick argues that we should not enforce the parties' choice of Nebraska law because California has a materially greater interest than Nebraska in the determination of this dispute. (Rest.2d Conf. of Laws, § 187, subd. (2)(b).) When a choice-of-law provision exists in a private contract, California courts will honor it unless either (a) there is no reasonable basis for the parties' choice or (b) application of the law of the chosen state would be contrary to the fundamental policy of a state that has a materially greater interest. (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464–465 [11 Cal.Rptr.2d 330, 834 P.2d 1148]; Rest.2d Conf. of Laws, § 187, subd. (2).) We are mindful of the desire to have a single forum, but TD Ameritrade's relationship with Nebraska supplies a reasonable basis for the parties' choice, and application of Nebraska law is not contrary to the fundamental policy of California, favoring enforcement of valid arbitration agreements. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1204 [8 Cal.Rptr.3d 517, 82 P.3d 727].)

## DISPOSITION

The order appealed from is affirmed in part and reversed in part. It is affirmed as to the denial of Oakwood's petition to compel arbitration and reversed as to the denial of TD Ameritrade's petition to compel arbitration.

Our decision is without prejudice to the trial court's power to reconsider its discretionary options regarding the Oakwood claims under section 1281.2, subdivision (c), should it choose to do so.

The parties shall bear their own costs on appeal.

Yegan, J., and Perren, J., concurred.