Filed 1/23/25  Boub v. Prime Healthcare CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THEODORE BOUB, | B334972 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV44375) |
| v. | |
| PRIME HEALTHCARE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gail Killefer, Judge.  Reversed.

Baker & Hostetler, Shareef S. Farag, and Kerri H. Sakaue, for Defendant and Appellant.

Brent S. Buchsbaum, for Plaintiff and Respondent.

_____

Defendant Prime Healthcare (Prime) appeals from an order granting plaintiff Theodore Boub's motion to withdraw from arbitration and proceed in court. The trial court found, pursuant to Code of Civil Procedure section 1281.97,[1] Prime materially breached the parties' arbitration agreement by failing to pay arbitration costs within 30 days of their due date. Prime argues that the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.), rather than the California Arbitration Act (CAA), governs the parties' arbitration agreement, and thus, section 1281.97 and its related sanctions provision, section 1281.99, do not apply. We conclude that because the arbitration agreement is governed by the substantive and procedural provisions of the FAA, sections 1281.97 and 1281.99 are inapplicable. Therefore, we reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

Boub worked for St. Francis Medical Center for almost 20 years. In July 2020, Prime purchased the hospital out of bankruptcy. Prime laid off Boub, who was 65 years old at the time, the following month. Boub sued Prime for disability and age discrimination and wrongful termination. Boub alleged Prime retained substantially all employees but "laid off . . . numerous employees as well, and in doing so, discriminated against these employees on the basis of age and disability."

In April 2022, the parties filed a joint stipulation for entry of order compelling arbitration and staying proceedings. The stipulation stated Boub entered into an arbitration agreement with Prime in July 2020, and the parties agreed Boub's claims were required to be submitted to final and binding arbitration.

---

[1] All further statutory references are to the California Code of Civil Procedure unless otherwise stated.

The parties stipulated that the agreement was "valid and enforceable" and the parties would proceed to arbitration pursuant its terms. The trial court ordered the parties to arbitration and stayed the case.

The arbitration agreement was attached to the stipulation. The agreement stated, "The Parties agree that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. The Parties also understand and agree that the Company is engaged in transactions involving interstate commerce." The arbitration was to be "conducted under the JAMS Rules then in effect." The agreement contained no other provision addressing the parties' choice of law.

In October 2022, Boub served Prime with a demand for arbitration. On November 17, 2022, JAMS sent the parties an invoice for Prime's portion of the filing fee, which stated, "Payment is due upon receipt." On December 9, 2022, JAMS emailed Prime's counsel that it was missing Prime's portion of the filing fee. Three days later, Prime's counsel informed JAMS that Prime had issued a check on November 21, 2022, but it had not been cashed. Prime's counsel indicated Prime would "stop payment" and "either cut a new check tomorrow and overnight it or wire payment ASAP." On December 22, 2022, JAMS emailed Prime's counsel to again inform it that JAMS was "missing [Prime's] portion of the filing fee." Thereafter, JAMS informed the parties' counsel that it "received two duplicate checks" from Prime: "one on December 28, 2022 and another on December 30, 2022."

Boub moved to lift the stay and proceed in court pursuant to section 1281.97.[2] He argued Prime did not pay the arbitration fees within 30 days, and thus, was in material breach of the arbitration agreement. Boub further requested attorney fees against Prime under section 1281.99.[3]

Prime opposed the motion, arguing it had not breached the arbitration agreement because it mailed a check to JAMS on November 21, 2022, and JAMS received and cashed that check. Prime asserted it also issued a second check on December 20, 2022, that was delivered to JAMS via Federal Express on December 22, 2022. Additionally, Prime argued that the parties agreed the FAA governed their agreement rather than the CAA.

The trial court set an evidentiary hearing and continued Boub's motion to the same date and time. JAMS submitted a declaration from its Vice President of Client Accounts. She declared JAMS received a check from Prime dated December 20, 2022, that was processed and posted on December 28, 2022, and

---

[2] Section 1281.97, subdivision (a)(1), states: "In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration under Section 1281.2."

[3] Section 1281.99, subdivision (a), provides: "The court shall impose a monetary sanction against a drafting party that materially breaches an arbitration agreement pursuant to subdivision (a) of Section 1281.97 . . . by ordering the drafting party to pay the reasonable expenses, including attorney's fees and costs, incurred by the employee or consumer as a result of the material breach."

that JAMS received another check dated November 21, 2022, which was "entered on the log of checks received other than by regular mail on December 30, 2022, and deposited the same day."

After taking the matter under submission, the trial court found it was undisputed JAMS sent the parties an invoice on November 17, 2022, with payment due upon receipt, and Prime had 30 days, or until December 16, 2022, to submit payment. JAMS confirmed it did not receive Prime's payment within 30 days. The court did not expressly analyze the language of the arbitration agreement to determine whether the procedural provisions of the FAA or CAA applied. However, it held that under section 1281.97, Boub had a right to request an order to lift the stay and proceed in court. The court then noted that although Prime claimed it paid the arbitration fees on time, Prime failed to submit any evidence showing either of its checks was mailed and received before the 30-day deadline. Further, the court found that section 1281.97 was not preempted by the FAA. The court granted the motion and ordered Prime to pay Boub sanctions of $1,485.00 under section 1281.99. Prime timely appealed.

## DISCUSSION

Prime argues the parties' arbitration agreement specifies that it is governed by the FAA, not California arbitration law, and therefore, sections 1281.97 and 1281.99 do not apply. Boub argues California's procedural arbitration rules apply to the agreement, including sections 1281.97 and 1281.99. We conclude the parties intended for the FAA's substantive and procedural

5

provisions to govern the agreement in this case. Thus, sections 1281.97 and 1281.99 of the CAA are inapplicable.

## A. Legal Principles and Standard of Review

The FAA was enacted in response to judicial hostility to enforcing arbitration agreements. (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339; *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University* (1989) 489 U.S. 468, 478 (*Volt*).) "The FAA embodies a strong federal policy favoring arbitration." (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 761.)

The FAA includes substantive and procedural provisions. (See *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350–1351.) Parties can agree to utilize FAA or other procedural rules when they arbitrate. (See *DIRECTV, Inc. v. Imburgia* (2015) 577 U.S. 47, 53–54 ["[FAA] allows parties to an arbitration contract considerable latitude to choose what law governs some or all of its provisions"].) If the parties agree to apply the FAA's procedural provisions, then CAA procedures do not apply. (*Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 345–346, 348 (*Victrola*); *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 394 (*Cronus*) ["parties to an arbitration agreement [may] *expressly* designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law"].) If the parties do not agree to adopt the FAA's or other procedural provisions, the CAA's procedural provisions apply by default. (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 177 (*Valencia*); *Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761, 786 (*Espinoza*).) "There is no federal policy favoring arbitration

6

under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." (*Volt*, *supra*, 489 U.S. at p. 476.)

The first question we must answer is whether the parties agreed to adopt the FAA's procedural provisions. (*Valencia*, *supra*, 185 Cal.App.4th at p. 177.) "[W]e examine the language of the contract to determine whether the parties intended to apply the FAA to the exclusion of California procedural law." (*Cronus*, *supra*, 35 Cal.4th at p. 383.) "'[E]ven when the [FAA] applies, interpretation of the arbitration agreement is governed by state law principles. . . . Under California law, ordinary rules of contract interpretation apply to arbitration agreements. . . . "'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. . . . If contractual language is clear and explicit, it governs.""" (*Valencia*, at p. 177.)

Whether the procedural provisions of the FAA were incorporated into the arbitration agreement "is a question of law involving interpretation of statutes and the contract (with no extrinsic evidence)" that we review de novo. (*Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1117 (*Rodriguez*).)

## B.    Sections 1281.97 and 1281.99 Do Not Apply to the Arbitration Agreement

The parties' arbitration agreement states, "The Parties agree that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq." The statement, "'this agreement is governed by the FAA,'" is "broad, encompassing both the procedural and substantive provisions of the FAA." (*Hernandez*

7

*v. Sohnen Enterprises, Inc.* (2024) 102 Cal.App.5th 222, 241 (*Hernandez*), review granted Aug. 21, 2024, S285696; see *Rodriguez*, *supra*, 136 Cal.App.4th at p. 1122 ["Plainly, the language of the contract requires the parties to arbitrate 'in conformance to' and 'agreement with' the FAA"].)[4]  The language specifying the agreement is "governed by" the FAA "'reflects the parties' clear contemplation that "the agreement" is to be completely and absolutely controlled by [the federal act].'"  (*Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, 1445–1446 ["'The phrase "governed by" is a broad one signifying a relationship of absolute direction, control, and restraint'"]; see *Victrola*, *supra*, 46 Cal.App.5th at p. 346 [FAA was incorporated into and governed motion to compel arbitration, instead of CAA, where agreement stated its enforcement was "governed by the [FAA]"].)

Because the parties agreed to arbitrate pursuant to the FAA's procedural provisions, the procedural provisions of the CAA do not apply.  (*Victrola*, *supra*, 46 Cal.App.5th at pp. 345–346, 348; *Rodriguez*, *supra*,136 Cal.App.4th at pp. 1116, 1121–1122.)  This includes sections 1281.97 and 1281.99.  (See *Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 641–642 [noting sections 1281.97 and 1281.99 define procedural rules for payment of arbitration fees]; see also *Suarez v. Superior Court of San Diego County* (2024) 99 Cal.App.5th 32, 42 [section 1281.97

---

[4]     We cite *Hernandez, supra*, 102 Cal.App.5th at p. 241, solely for its persuasive value pending review by our Supreme Court in interpreting the instant arbitration agreement, as the agreement in *Hernandez* contained similar language to the agreement in this case, stating that it was "governed by the FAA."  (Cal. Rules of Court, rule 8.1115(e)(1).)

specifies procedural rules for the payment of fees].)  The trial court could not rely upon sections 1281.97 and 1281.99 of the CAA to grant the motion to lift the stay and proceed in court. (See *Victrola*, at pp. 345–346, 348; see also *Rodriguez*, at pp. 1116, 1121–1122; *Hernandez, supra*, 102 Cal.App.5th at pp. 241–242.)[5]

In this case, the parties do not dispute that if there is an express agreement to incorporate the FAA's procedural provisions, California's procedural rules, including sections 1281.97 and 1281.99, do not apply.  The parties raise no concerns about the use of FAA procedural rules.  Boub solely contends that the arbitration agreement does not indicate the parties agreed to the FAA's procedural rules.  However, he does not point to any language in the arbitration agreement suggesting that California procedural law applies despite the parties' express agreement that the FAA governs.  There is no language suggesting the parties intended only some, but not all, FAA provisions to apply to their agreement.  (See *Rodriguez, supra*, 136 Cal.App.4th at pp. 1121–1122.)  There is no other, more specific "choice-of-law" provision.  (Cf. *Cronus, supra*, 35 Cal.4th at pp. 387, 394 [holding that agreement that was to be "'construed and enforced in

---

[5]     The FAA contains no provision analogous to sections 1281.97 and 1281.99 automatically deeming failure to pay arbitration fees within 30 days a material breach of an arbitration agreement resulting in waiver of the right to compel arbitration.  (See *Gloster v. Sonic Automotive, Inc.* (2014) 226 Cal.App.4th 438, 446 ["Because the [FAA] contains no provision analogous to section 1281.2, subdivision (c), that subdivision cannot be applied to deny the enforcement of arbitration clauses governed by the FAA"], citing *Cronus, supra*, 35 Cal.4th at p. 386 & *Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 968.)

9

accordance with and governed by the laws of the State of California'" incorporated the CAA].)  Boub cites no case in which a court has applied sections 1281.97 and 1281.99 to an arbitration agreement governed entirely by the FAA.

Boub contends that under *Espinoza, supra*, 83 Cal.App.5th 761 and *Los Angeles Unified School District v. Safety National Casualty Corp.* (2017) 13 Cal.App.5th 471, the procedural provisions of the CAA apply by default.  However, the arbitration agreements in *Espinoza* and *Los Angeles Unified School District* differed materially from the agreement in this case.  The arbitration agreement in *Espinoza* did not state that it was governed by the CAA or FAA.  (*Espinoza*, at p. 785.)  Similarly, the agreement in *Los Angeles Unified School District* was "completely silent, with no terms mentioning or alluding to the FAA, California law, or any other state law or rules of procedure." (*Los Angeles Unified School Dist.*, at p. 479.)  Because *Espinoza* and *Los Angeles Unified School District* both failed to state what law applied, California procedural rules did, indeed, apply by *default*.

In this case, the arbitration agreement is expressly and solely governed by the FAA.  The agreement says nothing about California arbitration law.  The parties "adopted the FAA—all of it—to govern their arbitration." (*Rodriguez, supra*, 136 Cal.App.4th at p. 1122.)  As such, the trial court could not rely on sections 1281.97 and 1281.99 of the CAA to grant Boub's motion. Because we find sections 1281.97 and 1281.99 are inapplicable, we do not reach the parties' remaining contentions, including whether sections 1281.97 and 1281.99 are preempted by the FAA.

10

## DISPOSITION

The trial court's order is reversed.  The matter is remanded for further proceedings consistent with this opinion.  Each party is to bear their own costs on appeal.


MORI, J.

We concur:


CURREY, P. J.


ZUKIN, J.

11