Filed 1/5/24  Baca v. Two Jinn CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| TEOFILO BACA, JR., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> TWO JINN, INC. et al. <br><br> Defendants and Appellants. | D081613 <br><br><br> (Super. Ct. No. 37-2020-00000922-CU-OE-CTL) |


APPEAL from an order of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Reversed.

Ames Karanjia, Jeffrey P. Ames, Mary E. Allain, Alma V. Montenegro, and Brooke M. Arthur for Defendants and Appellants.

Crosner Legal, Zachary Crosner, Jamie Serb; Clarkson Law Firm, Glenn A. Danas, Zarrina Ozari, and Katelyn M. Leeviraphan for Plaintiff and Respondent.

# I

# INTRODUCTION

Defendants Two Jinn, Inc. (hereafter, Two Jinn), Robert Hayes, and Herb Mutter appeal an order denying their petition to compel individual arbitration of a claim asserted by plaintiff and former Two Jinn employee, Teofilo Baca, Jr., under the Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.; PAGA). The trial court denied the petition after finding that the defendants waived their right to seek arbitration by litigating the case in court for two years before seeking to arbitrate the PAGA claim.

On appeal, the defendants argue they did not waive their right to arbitrate the PAGA claim because they petitioned to compel arbitration soon after the United States Supreme Court issued *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. __ [142 S.Ct. 1906] (*Viking River*), which held, among other things, that PAGA actions do not fall outside the scope of the Federal Arbitration Act (9 U.S.C. § 1 et seq.; FAA). According to the defendants, the trial court erred in finding waiver because it would have been futile for them to pursue arbitration of the PAGA claim before *Viking River*. We agree with the defendants. Therefore, we reverse the order denying the petition to compel arbitration and remand the matter for further proceedings.

# II

# BACKGROUND

A. *Factual Background*

Two Jinn is a bail bond company that does business under the name Aladdin Bail Bonds. Hayes is the company's chief executive officer and Mutter is its chief financial officer. Baca worked for Two Jinn as a bail coordinator from November 2017 until September 2019.

When Baca started working for Two Jinn, he signed a standalone two-page arbitration agreement. The arbitration agreement states that the "Federal Arbitration Act shall govern the interpretation, enforcement, and all proceedings pursuant to this Agreement. To the extent that the [FAA] is inapplicable, the California Arbitration Act shall apply."

The arbitration agreement requires the parties to arbitrate covered disputes according to the following terms:

> "The Company and I each agree to submit to final and binding arbitration any and all disputes that we could otherwise pursue in state or federal court that arise from or relate in any way to my recruitment, hiring, employment, or the termination of my employment, with the Company. This includes, without limitation, claims that the Company may have against me or that I may have against the Company, or any of its employees, officers, directors or agents, based on any state or federal statute (including claims ... based on the California Labor Code), as well as common law claims ... but excludes ... any other claim that cannot legally be subject to a pre-dispute arbitration agreement under applicable law. [¶] ... [¶] The arbitration shall be conducted by a single neutral arbitrator in accordance with the then-current rules of the JAMS Arbitration and Mediation Services ('JAMS') for resolution of employment disputes ...."

The arbitration agreement includes a class action waiver, which waives Baca's right "to bring on behalf of persons other than [himself], or to otherwise participate with other persons in, any class action." However, the agreement does not contain a representative action waiver.

B. *Procedural Background*

On January 7, 2020, Baca filed the present action against Two Jinn, Hayes, and Mutter in the Superior Court for the County of San Diego. The complaint asserted a single PAGA claim for alleged violations of the Labor Code and Industrial Welfare Commission (IWC) Wage Orders, including meal and rest break, minimum wage, overtime, itemized wage statement,

3

recordkeeping, and wage payment violations. Baca sought civil penalties for alleged violations suffered by himself and by other similarly aggrieved employees.

On February 13, 2020, the defendants answered the complaint. In their answer, they did not assert the arbitration agreement as an affirmative defense.

On February 9, 2021, Baca filed the operative first amended complaint. The amended complaint clarified the scope of the aggrieved employees on whose behalf Baca sought civil penalties, but it was in all other respects identical to the initial complaint.

On March 12, 2021, the defendants answered the amended complaint. Once again, they did not identify the arbitration agreement as an affirmative defense.

Discovery ensued. Baca propounded written interrogatories and requests for the production of documents to which the defendants responded. Two Jinn also deposed Baca and he, in turn, deposed Two Jinn's person most knowledgeable and three other corporate employees.

The parties filed discovery motions as well. The defendants filed a motion to sequence discovery and a motion for a protective order seeking to limit the discovery requests to which they were obligated to respond—both of which the court denied. For his part, Baca filed a motion to compel discovery responses, which the court granted in part and denied in part.

The defendants also filed substantive motions attacking Baca's lawsuit. On December 21, 2021, they moved to strike the allegations of the amended complaint pertaining to meal and rest break violations on grounds that a PAGA trial based on these allegations would be unmanageable. After a hearing, the court denied the motion to strike.

4

On April 8, 2022, the defendants moved for summary judgment. They argued summary judgment was warranted because Baca was not an "aggrieved employee," and he therefore lacked statutory standing to seek penalties from the defendants, because he was not a Two Jinn employee during the time period in which the defendants allegedly violated the Labor Code and IWC Wage Orders. The court did not rule on the motion for summary judgment, however, because it denied the defendants' petition to compel arbitration and the defendants appealed the court's arbitration ruling (see *post* Section II(C)) before the court could adjudicate the summary judgment motion.

C. *Petition to Compel Arbitration*

On June 15, 2022, the United States Supreme Court issued *Viking River, supra*, 596 U.S. at p. __ [142 S.Ct. 1906]. As we will discuss in depth below, *Viking River* held that PAGA actions do not fall outside the scope of the FAA, rejecting a contrary determination previously reached by the California Supreme Court in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*). It also concluded that the FAA preempted a rule of California state law prohibiting predispute agreements to split PAGA claims into bifurcated proceedings—specifically, agreements to arbitrate Labor Code violations personally suffered by the plaintiff (so-called individual claims) and to litigate Labor Code violations arising out of events involving other employees (so-called non-individual claims) in court.

On July 6, 2022, the defendants petitioned to compel arbitration of Baca's individual PAGA claim for the alleged Labor Code violations he personally suffered and to stay the remainder of the case pending the arbitration. The defendants acknowledged that parties may waive their right to arbitrate, but argued there was no waiver in the present case because they

did not have a right to compel arbitration of the PAGA claim until the United States Supreme Court issued *Viking River*.

On January 30, 2023, the trial court denied the petition to compel arbitration, finding the defendants waived their right to seek arbitration. In support of this finding, the court noted that two years had passed since the initiation of the lawsuit, the defendants did not assert arbitration as an affirmative defense in their answers, the parties undertook "significant discovery" efforts, and the court had adjudicated multiple discovery motions and a motion to strike.

The defendants appeal the order denying their petition to compel arbitration.

## III

## DISCUSSION

### A. *Standard of Review*

"On appeal from the denial of a motion to compel arbitration, 'we review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law.' " (*Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 892.)

"Whether a party has waived the right to compel arbitration is generally a question of fact. A trial court's finding of waiver is therefore reviewed under the substantial evidence standard unless ' "the facts are undisputed and only one inference may reasonably be drawn," ' in which case ' "the reviewing court is not bound by the trial court's ruling." ' " (*Sprunk v. Prisma LLC* (2017) 14 Cal.App.5th 785, 794.)

### B. *The FAA Applies to the Arbitration Agreement*

The FAA states, in relevant part, that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising ... shall be valid, irrevocable, and enforceable

6

...." (9 U.S.C. § 2.)  The FAA "makes enforceable a written arbitration provision in a contract evidencing a transaction affecting interstate commerce." (*Desert Regional Medical Center, Inc. v. Miller* (2022) 87 Cal.App.5th 295, 308.)  It also "authorizes any party aggrieved by the failure or refusal of another to arbitrate under an enforceable arbitration agreement to petition the court for an order to compel arbitration in accordance with the terms of the arbitration agreement." (*Ibid.*; see 9 U.S.C. § 4.)

"Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.  The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.' [Citation.]  Thus, the FAA 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.' [Citation.]  The policy of enforceability established by section 2 of the FAA is binding on state courts as well as federal courts." (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 384.)

Our first task in this appeal is to determine whether the FAA applies to the parties' arbitration agreement.  Baca contends the FAA does not apply to the arbitration agreement because the defendants failed to supply the trial court with admissible evidence establishing that the parties' agreement, the defendants' business, or the parties' employment relationship had an impact on, or a relationship with, interstate commerce.  The defendants, on the other hand, argue the FAA applies to the arbitration agreement because the

7

agreement itself specifically states that it is governed by the FAA. The defendants have the better argument.

"The FAA applies to contracts that involve interstate commerce (9 U.S.C. §§ 1, 2), but since arbitration is a matter of contract, the FAA also applies if it is so stated in the agreement." (*Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63, 76 (*Barrera*); see also *Davis v. Shiekh Shoes, LLC* (2022) 84 Cal.App.5th 956, 963 [same]; *Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 355 ["the presence of interstate commerce is not the only manner under which the FAA may apply. ... [T]he parties may also voluntarily elect to have the FAA govern enforcement of the Agreement"]; cf. *Mastick v. TD Ameritrade, Inc.* (2012) 209 Cal.App.4th 1258, 1263 ["contracting parties may agree that the FAA will not govern their arbitration even if the contract involves interstate commerce"].)

Here, the arbitration agreement expressly states the FAA "shall govern the interpretation, enforcement, and all proceedings pursuant to [the] [a]greement ...." This contractual language unambiguously reflects the parties' election for the FAA to apply to the arbitration agreement.[1] Because

---

[1] The choice of law language is not made ambiguous by the arbitration agreement's reference to the California Arbitration Act. The agreement merely supplies the California Arbitration Act as a backup source of law if the FAA—the parties' preferred source of law—is found to be inapplicable.

the parties voluntarily agreed that the FAA would apply, the FAA governs the arbitration agreement.[2]

C. *The Defendants Did Not Waive their Right to Seek Arbitration*

Having resolved the question of whether the FAA applies to the parties' arbitration agreement, we proceed to the primary issue in this appeal— whether the defendants waived their right to seek arbitration under the FAA.

Baca argues the defendants waived their right to petition for arbitration because they behaved inconsistently with their right to arbitrate, substantially invoked the machinery of litigation, and delayed pursuing arbitration. He emphasizes that the defendants did not seek arbitration until two years after the commencement of the litigation, they did not assert arbitration as an affirmative defense in either of their answers, and they engaged in discovery and motion practice.

In response, the defendants contend they did not waive their right to seek arbitration because it would have been futile to request arbitration any earlier than they did. According to the defendants, prior California Supreme Court precedent—specifically, rules of law announced in *Iskanian, supra*, 59 Cal.4th 348—prevented them from pursuing arbitration earlier. The defendants claim they requested arbitration as soon as they had a chance of success—after the United States Supreme issued *Viking River* and abrogated

---

2    In support of his argument that the FAA does not apply to the arbitration agreement, Baca relies on *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, *Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, and *Hoover v. American Income Life Insurance Co.* (2012) 206 Cal.App.4th 1193, three cases in which courts found that the FAA did not apply because the parties seeking arbitration failed to show that their arbitration agreements involved interstate commerce. These cases are distinguishable from the present one. Unlike the arbitration agreement at issue here, the arbitration agreements in *Carbajal*, *Lane*, and *Hoover* did not expressly state that they were governed by the FAA.

the roadblock to arbitration set up by *Iskanian*. Once more, we agree with the defendants.

### 1. *PAGA*

"The Legislature enacted PAGA almost two decades ago in response to widespread violations of the Labor Code and significant underenforcement of those laws. [Citations.] Before PAGA's enactment, tools for enforcing the Labor Code were limited. Some statutes allowed employees to sue their employers for damages resulting from Labor Code violations such as unpaid wages. [Citations.] Other Labor Code violations were punishable only as criminal misdemeanors, which local prosecutors tended not to prioritize. [Citation.] Additionally, several statutes provided civil penalties for Labor Code violations, but only state labor law enforcement agencies could bring an action for civil penalties and those agencies lacked sufficient enforcement resources." (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1116 (*Adolph*).)

"To address these shortcomings, the Legislature enacted PAGA to create new civil penalties for various Labor Code violations and ' "to allow aggrieved employees, acting as private attorneys general, to recover [those] penalties." ' [Citation.] An employee who brings a PAGA action to recover civil penalties acts ' "as the proxy or agent" ' of the state. [Citations.] 'PAGA is designed primarily to benefit the general public, not the party bringing the action.' [Citation.] Penalties recovered are dedicated largely 'to public use ... instead of being awarded entirely to a private plaintiff.' " (*Adolph*, *supra*, 14 Cal.5th at p. 1116.)

"To have standing to bring a PAGA action, a plaintiff must be an 'aggrieved employee,' which the statute defines as 'any person who was employed by the alleged violator and against whom one or more of the alleged

10

violations was committed.' [Citation.] An aggrieved employee becomes deputized to prosecute Labor Code violations once he or she has complied with PAGA's notice requirements. [Citation.] Before filing suit, the aggrieved employee 'must notify the employer and the [Labor and Workforce Development Agency (LWDA)] of the specific labor violations alleged, along with the facts and theories supporting the claim.' [Citations.] 'If the agency does not investigate, does not issue a citation, or fails to respond to the notice within 65 days, the employee may sue.' [Citations.] 'The notice requirement allows the relevant state agency "to decide whether to allocate scarce resources to an investigation" ' [citation] or instead to deputize the aggrieved employee to pursue sanctions on the state's behalf. Once deputized, the aggrieved employee has authority to 'seek any civil penalties the state can.' " (*Adolph*, *supra*, 14 Cal.5th at pp. 1116–1117.) Because the aggrieved employee may seek any civil penalties the state can, the aggrieved employee "may seek penalties not only for the Labor Code violation that affected him or her, but also for different violations that affected other employees." (*Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 750.)

### 2. *Iskanian and its Progeny*

In *Iskanian*, the California Supreme Court considered the viability of a waiver of an employee's right to bring a PAGA action contained in a predispute arbitration agreement. It held that a waiver of the right to bring a PAGA action in any forum impermissibly "disable[s] one of the primary mechanisms for enforcing the Labor Code" and "harm[s] the state's interests in ... receiving the proceeds of civil penalties used to deter violations," which violates state public policy. (*Iskanian, supra*, 59 Cal.4th at pp. 382–383.)

The *Iskanian* court also rejected an argument that a predispute arbitration agreement may be enforced so long as it "prohibits only [non-

11

individual PAGA] claims, not individual PAGA claims for Labor Code violations that an employee suffered." (*Iskanian, supra*, 59 Cal.4th at p. 383.) The court concluded that, "whether or not an individual claim is permissible under the PAGA, a prohibition of [non-individual] claims frustrates the PAGA's objectives." (*Id.* at p. 384.) In other words, the *Iskanian* court prohibited an employer from "forc[ing] an employee to split a PAGA claim into 'individual' and ['non-individual'] components, with each being litigated in a different forum." (*Perez v. U-Haul Co. of California* (2016) 3 Cal.App.5th 408, 421; see also *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 88 ["Appellate courts have rejected efforts to split PAGA claims into individual and [non-individual] components."].)

Additionally, the *Iskanian* court considered—and rejected—a claim that the FAA preempts the state's ban on PAGA waivers. It "conclude[d] that the rule against PAGA waivers does not frustrate the FAA's objectives because ... the FAA aims to ensure an efficient forum for the resolution of *private* disputes, whereas a PAGA action is a dispute between an employer and the state Labor and Workforce Development Agency." (*Iskanian, supra*, 59 Cal.4th at p. 384.) In the view of the *Iskanian* court, "a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*, which alleges directly or through its agents—either the Labor and Workforce Development Agency or aggrieved employees—that the employer has violated the Labor Code." (*Id.* at pp. 386– 387.) According to the *Iskanian* court, the FAA "does not aim to promote arbitration of claims belonging to a government agency, and that is no less true when such a claim is brought by a statutorily designated proxy for the agency as when the claim is brought by the agency itself." (*Id.* at p. 388.)

12

After *Iskanian*, several Courts of Appeal (including our own) were confronted with a question arising out of—but distinct from the issues considered in—*Iskanian*. Specifically, we were tasked with deciding whether a court could compel arbitration of *any* PAGA claim (either an individual PAGA claim or a non-individual PAGA claim) without the consent of the state pursuant to a predispute arbitration agreement between an employee and his or her employer. Relying predominately on *Iskanian*'s FAA preemption analysis, the Courts of Appeal uniformly answered that question in the negative. (See *Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281, 1287 (*Piplack*) ["After *Iskanian*, it was settled law in California that PAGA claims could not be compelled to arbitration, in whole or in part."].)

Our court articulated the following rationale while reaching this conclusion: "Without the state's consent, a predispute agreement between an employee and an employer cannot be the basis for compelling arbitration of a representative PAGA claim because the state is the owner of the claim and the real party in interest, and the state was not a party to the arbitration agreement." (*Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 622; see also *Herrera v. Doctors Medical Center of Modesto, Inc.* (2021) 67 Cal.App.5th 538, 550 ["a former employee who is authorized to pursue PAGA representative claims cannot be compelled to arbitrate the PAGA claims based on a predispute arbitration agreement"]; *Contreras v. Superior Court* (2021) 61 Cal.App.5th 461, 472 [instructing trial court to deny motion to compel arbitration because "[n]othing in the record suggest[ed] that the state ... consented to the arbitration of petitioners' PAGA claim"]; *Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 871 ["a predispute agreement to arbitrate is ineffective to compel arbitration of a PAGA claim, as the employee who signs the agreement is not then authorized to waive the state's

13

right to a judicial forum"]; *Betancourt v. Prudential Overall Supply* (2017) 9 Cal.App.5th 439, 447 ["the fact that [a plaintiff] may have entered into a predispute agreement to arbitrate does not bind the state to arbitration"]; *Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665, 678 ["Because a PAGA plaintiff, whether suing solely on behalf of himself or herself or also on behalf of other employees, acts as a proxy for the state ... a PAGA claim cannot be ordered to arbitration without the *state's* consent."].)

This was the state of the law when Baca filed the present action and throughout the course of the litigation—until *Viking River*.

### 3. *Viking River*

On June 15, 2022, the United States Supreme Court issued *Viking River*, which considered whether the FAA preempts the rules of state law that were articulated and applied in the *Iskanian* decision.

Before it reached these preemption issues, however, the *Viking River* court addressed whether the FAA applies to PAGA actions. It held that the FAA *does* apply to PAGA actions—an explicit rejection of the *Iskanian* court's determination that PAGA claims fall outside the scope of the FAA. (*Viking River, supra*, 596 U.S. at p. __, fn. 4 [142 S.Ct. at p. 1919, fn. 4].) The *Viking River* court observed that "§ 2 limit[s] the FAA's enforcement mandate to agreements to arbitrate controversies that 'arise out of' the parties' contractual relationship," but concluded that "disputes resolved in PAGA actions satisfy this requirement." (*Viking River,* at p. __ [142 S.Ct. at p. 1919, fn. 4].) According to the court, "The contractual relationship between the parties is a but-for cause of any justiciable legal controversy between the parties under PAGA, and 'arising out of' language normally refers to a causal relationship. [Citations.] And regardless of whether a PAGA action is in some sense also a dispute between an employer and the State, nothing in the

14

FAA categorically exempts claims belonging to sovereigns from the scope of § 2." (*Viking River,* at p. __ [142 S.Ct. at p. 1919, fn. 4].)

Proceeding to its preemption analysis, the *Viking River* court held the FAA does not preempt the state's ban against PAGA waivers. (*Viking River, supra,* 596 U.S. at p. __ [142 S.Ct. at p. 1913].) In so doing, the *Viking River* court rejected an assertion that PAGA waivers must be enforced because "PAGA creates a form of class or collective proceeding" and *Iskanian*'s ban on PAGA waivers thus "presents parties with the same impermissible choice as the rules [the United States Supreme Court] ha[s] invalidated in [its] decisions concerning class- and collective-action waivers: Either arbitrate disputes using a form of class procedure, or do not arbitrate at all." (*Viking River,* at p. __ [142 S.Ct. at p. 1918].) In repudiating this analogy, the *Viking River* court highlighted several distinctions between class actions and PAGA actions, including the fact that a plaintiff in a PAGA action—unlike a class action plaintiff—represents just a single principal (the LWDA), does not need to obtain certification, and does not obtain a judgment that is binding on other nonparty employees. (*Viking River,* at p. __ [142 S.Ct. at p. 1920].)

However, the *Viking River* court held that *Iskanian*'s anti-splitting rule runs afoul of the FAA. According to the *Viking River* court, the anti-splitting rule "unduly circumscribes the freedom of parties to determine 'the issues subject to arbitration' and 'the rules by which they will arbitrate,' [citation], and does so in a way that violates the fundamental principle that 'arbitration is a matter of consent,' [citation]." (*Viking River, supra,* 596 U.S. at p. __ [142 S.Ct. at p. 1923].) "If the parties agree to arbitrate 'individual' PAGA claims based on personally sustained violations, [the anti-splitting rule] allows the aggrieved employee to abrogate that agreement after the fact and demand

15

either judicial proceedings or an arbitral proceeding that exceeds the scope jointly intended by the parties." (*Id.* at p. __ [142 S.Ct. at p. 1924].)

Three weeks after the issuance of *Viking River*, the defendants petitioned to compel arbitration of Baca's individual PAGA claim.

### 4. *Application*

Against this backdrop, we now consider whether the defendants waived their right to seek arbitration of the individual PAGA claim for the statutory violations personally suffered by Baca. As we shall explain, we conclude the defendants did not waive their right to arbitrate.

The *Piplack* decision is instructive on the issue of waiver. In *Piplack*, two plaintiffs filed a PAGA claim against their former employer seeking civil penalties on their own behalf and on behalf of other aggrieved employees. (*Piplack, supra*, 88 Cal.App.5th at pp. 1285–1286.) The parties were bound by a predispute arbitration agreement with a PAGA waiver and severability clauses requiring severance of the PAGA waiver if "necessary to ensure that the individual [PAGA] action proceed[ed] in arbitration." (*Piplack,* at p. 1285.) The employer petitioned to compel arbitration after more than two years of litigation, just a few months before the issuance of *Viking River*. (*Piplack,* at p. 1286.) The trial court summarily denied the petition and, in *Piplack*, the Court of Appeal reversed that decision as to one of the plaintiffs and compelled arbitration of his individual PAGA claim.[3] (*Id.* at pp. 1286, 1293.)

In reaching this decision, the *Piplack* court rejected the plaintiffs' claim that the employer "waived its right to arbitrate by delaying seeking

---

3    With respect to the second plaintiff, *Piplack* remanded the matter to the trial court to resolve factual disputes concerning the plaintiff's capacity to accept the arbitration agreement and his alleged disaffirmance of the agreement. (*Piplack, supra*, 88 Cal.App.5th at p. 1290.)

arbitration, participating in litigation in the trial court, omitting arbitration as an affirmative defense in its answer to plaintiffs' first amended complaint, and engaging in settlement negotiations in this and other PAGA cases." (*Piplack, supra*, 88 Cal.App.5th at p. 1289.)  It held the employer did not waive its right to arbitrate, as a matter of law, because the employer "raised its right to arbitrate as soon as it had any chance of success" based on *Viking River*.  (*Piplack,* at p. 1289.)  "The fact that [the employer] vigorously defended itself in the trial court [made] no difference because the relevant question [was] whether there was any *unreasonable* delay.  The omission of arbitration as an affirmative defense to plaintiffs' first amended complaint [was] also not a waiver of arbitration for precisely the same reason ...." (*Id.* at pp. 1289–1290; see also *Iskanian, supra*, 59 Cal.4th at pp. 374–378 [defendant neither acted inconsistently with its right to arbitrate nor unreasonably delayed seeking arbitration by engaging in discovery and litigating class certification for three years until a change in law allowed for the enforcement of class action waiver in parties' arbitration agreement].)

Similarly, in *Barrera, supra*, 95 Cal.App.5th 63, the defendants moved to compel arbitration of an individual PAGA claim asserted by former employees under a predispute arbitration agreement requiring individual arbitration of all legal claims, including PAGA claims.  The trial court denied the motion and, one week later, *Viking River* was issued.  (*Barrera*, at pp. 73–74.)  Although the trial court did not address whether the defendants waived their right to seek arbitration, the *Barrera* court considered the issue and concluded, as a matter of law, that there was no waiver.  (*Id.* at pp. 77–79.)  Relying on *Piplack*, the *Barrera* court determined that the defendants did not waive their "right to arbitrate by 'litigating th[e] case for over a year' before filing their motion to compel arbitration" because they "moved to compel

arbitration soon after [they] learned the United States Supreme Court granted certiorari in *Viking River* with respect to the *Iskanian* rule—which they explained in their motion was 'the only obstacle to arbitration of the claim ...' and likely to be overturned in *Viking River*." (*Barrera*, at pp. 77–79.) "Given these circumstances, any delay in bringing the[] motion was not unreasonable." (*Id.* at p. 79; see also *Johnson v. Lowe's Home Centers, LLC* (E.D. Cal. 2022) 630 F.Supp.3d 1352, 1354, fn. 1 ["The Court concludes Defendant's motion is timely because it raises arguments that were futile prior to *Viking River*."].)

Like the defendants in *Piplack* and *Barrera*, the defendants here did not waive their right to arbitrate because a pre-*Viking River* petition to compel arbitration would have been futile. As noted, an unbroken chain of pre-*Viking River* authority relied on *Iskanian*'s determination that a PAGA action lies outside the FAA's coverage in order to conclude that PAGA actions may not be compelled into arbitration without the state's consent. Under this body of law, the defendants could not successfully have petitioned to compel arbitration of any aspect of the PAGA claim—either the individual PAGA claim or the non-individual PAGA claim—because the state did not consent to arbitration of the PAGA claim. In *Viking River*, however, the United States Supreme Court held that a PAGA action does not lie outside the scope of the FAA. (*Viking River, supra*, 596 U.S. at p. __, fn. 4 [142 S.Ct. at p. 1919, fn. 4.) This change in law gave the defendants a reasonable expectancy—for the first time—that a court might hold that the state-must-consent rule derived from *Iskanian* no longer remains good law and, therefore, at least some portion of the PAGA claim could be compelled into arbitration without the state's consent. Thus, we conclude, as a matter of law, that the defendants did not waive their right to arbitrate by refraining from seeking

18

arbitration until *Viking River*, nor by litigating the case in the interim while *Iskanian* remained fully intact.

In light of our conclusion that the defendants did not waive their right to seek arbitration of the PAGA claim, we reverse the order denying the petition to compel arbitration and remand the matter for the trial court to adjudicate the petition on the merits.[4]

IV

DISPOSITION

The order is reversed. Appellants are entitled to their appellate costs.

McCONNELL, P. J.

WE CONCUR:

KELETY, J.

CASTILLO, J.

---

[4]    We express no opinion about whether the arbitration agreement requires arbitration of Baca's non-individual PAGA claim, nor do we express an opinion on the related issue of whether the agreement delegates to the arbitrator the task of determining the scope of arbitrable claims through its incorporation of JAMS rules. These issues received relatively little attention in the parties' briefs compared to the waiver issue, and they need not be addressed to resolve the appeal. (*Martinez v. San Diego County Credit Union* (2020) 50 Cal.App.5th 1048, 1071 ["an appellate court generally will not address an issue unnecessary to the resolution of the appeal"].)

19