Filed 5/22/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MASSIEL HERNANDEZ, | B323303 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. |
| v. | 21STCV26283) |
| SOHNEN ENTERPRISES, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steven I. Goorvitch, Judge. Reversed.

Wolflick, Khachaturian & Bouayad, Gregory D. Wolflick and Theodore S. Khachaturian for Defendant and Appellant.

Moon Law Group, Kane Moon, Christopher L. Garcia and Sara Salinas for Plaintiff and Respondent.

———————————

After an employer failed to pay arbitration costs within 30 days of the due date, the employee filed a motion to withdraw from arbitration and litigate in state court as permitted under California Code of Civil Procedure section 1281.97.[1] The trial court found the employer breached the arbitration agreement and granted the motion. On appeal, the employer contends that the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) governs the parties' arbitration agreement and preempts section 1281.97. First, we conclude that an order granting a motion under section 1281.97 to withdraw from arbitration and proceed in court is appealable. Second, we find the arbitration agreement in this case is governed by the FAA, including both the substantive and procedural provisions of the FAA, rather than California's arbitration laws. As a result, the procedures of section 1281.97 do not apply and the order must be reversed. Even if we were to conclude that section 1281.97 applies, however, we would still reverse, because when an agreement falls within the scope of the FAA and does not expressly adopt California arbitration laws, the FAA preempts the provisions of section 1281.97 that mandate findings of breach and waiver. Accordingly, we reverse.

## FACTUAL AND PROCEDURAL HISTORY

On December 2, 2016, plaintiff and respondent Massiel Hernandez executed an arbitration agreement with defendant and appellant Sohnen Enterprises that stated, "This Agreement is governed by the Federal Arbitration Act ('FAA'), 9 U.S.C. [section] 1, et seq." The agreement provided that "any disputes

_____

[1] All further statutory references are to the California Code of Civil Procedure unless otherwise stated.

2

regarding the enforceability, interpretation, scope, applicability or coverage of this Agreement are reserved solely for the Court, not for arbitration." If the parties could not agree on an arbitrator, a party could "seek court appointment of an arbitrator pursuant to the FAA." The agreement explained that arbitration fees would be paid by Sohnen or other parties to the dispute, not by the employee, but parties choosing to be represented by an attorney would be responsible for their own attorney fees. During arbitration, the parties could conduct discovery and bring motions under the Federal Rules of Civil Procedure except as specifically provided otherwise in the agreement. The parties waived class or representative actions "to the fullest extent permitted by the FAA." The agreement also provided, "The arbitrator shall not have the power to commit errors of law or legal reasoning and the arbitrator's award may be vacated or corrected by a court of competent jurisdiction for any such error. The decision of the arbitrator can be entered and enforced as a final judgment in any court of competent jurisdiction."

Hernandez worked for Sohnen as a "product handler" from February 2015 to August 2020. On July 16, 2021, Hernandez filed a complaint against Sohnen for disability discrimination, Labor Code violations, and related causes of action. On November 8, 2021, the parties stipulated to stay the trial court proceedings and arbitrate pursuant to their arbitration agreement, which they attached. The stipulation stated that the Federal Rules of Civil Procedure applied to the arbitration. The parties represented that their agreement "fully complies with the requirements of *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83," because the arbitration would provide a neutral arbitrator, all types of relief otherwise available

3

in court, a written arbitration award, and Sohnen would pay "the entire cost of the arbitration filing fee and the arbitrator's initial deposit (or any similar request, including any fees or costs that are unique to the arbitration) on or before any deadline specified by the arbitrator to do so[.]" The trial court entered an order in accordance with the terms of the stipulation, stating that Sohnen must pay the arbitration costs on or before any deadline specified by the arbitrator.

Hernandez filed a demand for arbitration with the Judicial Arbitration and Mediation Services, Inc. (JAMS). On April 7, 2022, JAMS sent a notice to the parties stating that filing fees of $1,750 were due upon receipt. Once the fees were received, JAMS would formally commence the matter and proceed with the arbitrator selection process. Sohnen paid the filing fees on May 13, 2022.

Hernandez filed a motion in the trial court to withdraw from arbitration and vacate the stay of court proceedings pursuant to section 1281.97. She argued that under section 1281.97, Sohnen materially breached the arbitration agreement and waived its right to arbitrate by failing to pay the arbitration fees within 30 days of the due date.

Sohnen opposed the motion on several grounds, including that the FAA and the Federal Rules of Civil Procedure applied to the arbitration, rather than California's Code of Civil Procedure, and the FAA preempts sections 1281.97, 1281.98, and 1281.99.

In July 2022, Hernandez filed a reply. She noted Sohnen did not dispute that the deposit to initiate arbitration was not paid within 30 days of the due date. She argued that although the Federal Rules of Civil Procedure applied to the arbitration itself, there was no arbitration because Sohnen did not timely

4

pay the deposit required to commence arbitration. In addition, the FAA did not preempt section 1281.97, because section 1281.97 facilitated arbitration by requiring prompt payment of arbitration expenses.

On August 31, 2022, a hearing was held on the motion to withdraw from arbitration and vacate the stay of court proceedings under section 1281.97. The trial court took the matter under submission. On September 1, 2022, the court found Sohnen had paid the required arbitration fees late and therefore breached the arbitration agreement, as provided in section 1281.97. The court ordered that Hernandez was not required to arbitrate, granted the motion to withdraw from arbitration, and vacated the stay of litigation. The court concluded the FAA did not preempt section 1281.97. As an additional basis for the ruling, the court found Sohnen violated the trial court's order to pay the cost of the arbitration and the initial deposit on or before the arbitrator's deadline. Although federal rules might apply to the arbitration itself, the court concluded federal rules did not apply to the trial court's decisions in advance of the arbitration proceeding, and the parties had delegated threshold determinations to the court. The court awarded $1,230 in monetary sanctions to Hernandez for reasonable expenses incurred as a result of the material breach. Sohnen filed a timely notice of appeal from the order under section 1281.97.

# DISCUSSION

## California Law Governing a Failure to Pay Arbitration Fees

Even prior to enactment of section 1281.97, an employee could avoid enforcement of an arbitration agreement by showing that the employer's failure to perform an obligation under the contract was a material breach of the agreement. (*Pry Corp. of America v. Leach* (1960) 177 Cal.App.2d 632, 639; *Brown v. Dillard's, Inc.* (2005) 430 F.3d 1004, 1010–1012.) Whether a party's breach of an agreement is material is normally a question of fact. (*Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277–278.) Unless a contract states that time is of the essence, a payment made within a reasonable time after the specified due date will usually constitute substantial compliance. (*Magic Carpet Ride LLC v. Rugger Investment Group, L.L.C.* (2019) 41 Cal.App.5th 357, 364 (*Magic Carpet*).)

Similarly, an employer who fails to perform an obligation under an arbitration agreement may have waived the right to demand arbitration. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 983 (*Engalla*).) The party seeking to show a waiver has a heavy burden of proof because California law reflects a strong policy favoring arbitration agreements. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 (*St. Agnes*).) Whether there has been a waiver of the right to arbitrate is also generally a question of fact.

6

(*Engalla, supra*, 15 Cal.4th at pp. 983–984; *St. Agnes, supra*, 31 Cal.4th at p. 1196.)

In 2019, the California Legislature added sections 1281.97, 1281.98, and 1281.99 to the California Arbitration Act (CAA; § 1280 et seq.) to assist consumers and employees who find themselves in "procedural limbo" because they are required to submit a dispute to arbitration, but the entity enforcing the arbitration agreement has not paid the arbitration fees required to proceed. (Stats. 2019, ch. 870, § 4; *Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 629 & 633–634 (*Gallo*).) Section 1281.97 addresses the failure to timely pay fees or costs to initiate arbitration, while section 1281.98 addresses the failure to timely pay fees or costs to continue arbitration. (*De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 750 (*De Leon*).)

Section 1281.97, subdivision (a)(1), provides: "In an employment or consumer arbitration that requires . . . the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date[,] the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration under [s]ection 1281.2."

Section 1281.97, subdivision (b), provides, "If the drafting party materially breaches the arbitration agreement and is in default under subdivision (a), the employee or consumer may do either of the following: [¶] (1) Withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction. [¶] (2) Compel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration." If the employee or consumer chooses to withdraw from arbitration

7

and proceed in court, the court must impose sanctions on the drafting party under section 1281.99. (§ 1281.98, subd. (d).)

Section 1281.97 does not require that the arbitrator make an initial finding of breach, default, or waiver. (*Williams v. West Coast Hospitals, Inc.* (2022) 86 Cal.App.5th 1054, 1066 (*Williams*).) The statute defines a material breach "as a matter of law to be the failure to pay anything less than the full amount due by the expiration of the statutory grace period, rather than leaving materiality as an issue of fact for the trier of fact to determine." (*Gallo*, *supra*, 81 Cal.App.5th at p. 644.) There are no exceptions to section 1281.97 for substantial compliance or lack of prejudice. (*Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761, 775–776 (*Espinoza*).)

In the enacting legislation, the legislature expressed concern that an entity's failure to pay the arbitration provider hindered the efficient resolution of disputes. (Stats. 2019, ch. 870, § 1, subd. (c).) A company that compels arbitration, then strategically withholds payment of arbitration fees "severely prejudices" the ability of consumers and employees to pursue their claims. (Stats. 2019, ch. 870, § 1, subd. (d).) Section 1281.97 is not limited, however, to circumstances of strategic non-payment. (*Espinoza*, *supra*, 83 Cal.App.5th at p. 777.) The statute is strictly applied whenever a drafting party fails to pay arbitration costs and fees by the statutory deadline. (*Ibid*.)

In addition to the remedies provided under section 1281.97, section 1281.99 provides that the company or business that materially breached the arbitration agreement must pay the "reasonable expenses, including attorney's fees and costs, incurred by the employee or consumer as a result of the material breach" (§ 1281.99, subd. (a)), and may also suffer an evidentiary,

8

terminating, or contempt sanction unless it "acted with substantial justification" or "other circumstances make the imposition of the sanction unjust" (§ 1281.99, subd. (b)).

**Appealability**

As a preliminary matter, we must determine whether an order under section 1281.97 to withdraw from arbitration and proceed in court is an appealable order. "The existence of an appealable judgment is a jurisdictional prerequisite to an appeal. A reviewing court must raise the issue on its own initiative whenever a doubt exists as to whether the trial court has entered a final judgment or other order or judgment made appealable by Code of Civil Procedure section 904.1." (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.)

"The right to appeal is statutory." (*Gastelum v. Remax Internat., Inc.* (2016) 244 Cal.App.4th 1016, 1021 (*Gastelum*).) Section 904.1 provides a general list of appealable civil judgments and orders.[2] An order "dismissing or denying a petition to compel

[2] Section 904.1 states in full: "(a) An appeal, other than in a limited civil case, is to the court of appeal. An appeal, other than in a limited civil case, may be taken from any of the following: [¶] (1) From a judgment, except an interlocutory judgment, other than as provided in paragraphs (8), (9), and (11), or a judgment of contempt that is made final and conclusive by Section 1222. [¶] (2) From an order made after a judgment made appealable by paragraph (1) [¶] (3) From an order granting a motion to quash service of summons or granting a motion to stay the action on the ground of inconvenient forum, or from a written order of dismissal under Section 581d following an order granting a motion to dismiss the action on the ground of inconvenient

9

arbitration" is appealable under section 1294, subdivision (a), of the CAA.  Interlocutory orders, on the other hand, are generally not appealable.  (*Gastelum*, *supra*, 244 Cal.App.4th at p. 1022.)

No statute expressly states that orders under section 1281.97 are appealable, but California courts have concluded orders that are the "functional equivalent" of denying a petition

forum.  [¶] (4) From an order granting a new trial or denying a motion for judgment notwithstanding the verdict.  [¶] (5) From an order discharging or refusing to discharge an attachment or granting a right to attach order.  [¶] (6) From an order granting or dissolving an injunction, or refusing to grant or dissolve an injunction.  [¶] (7) From an order appointing a receiver.  [¶] (8) From an interlocutory judgment, order, or decree, made or entered in an action to redeem real or personal property from a mortgage thereof, or a lien thereon, determining the right to redeem and directing an accounting.  [¶] (9) From an interlocutory judgment in an action for partition determining the rights and interests of the respective parties and directing partition to be made.  [¶] (10) From an order made appealable by the Probate Code or the Family Code.  [¶] (11) From an interlocutory judgment directing payment of monetary sanctions by a party or an attorney for a party if the amount exceeds five thousand dollars ($5,000).  [¶] (12) From an order directing payment of monetary sanctions by a party or an attorney for a party if the amount exceeds five thousand dollars ($5,000). [¶] (13) From an order granting or denying a special motion to strike under Sections 425.16 and 425.19.  [¶] (14) From a final order or judgment in a bifurcated proceeding regarding child custody or visitation rights.  [¶] (b) Sanction orders or judgments of five thousand dollars ($5,000) or less against a party or an attorney for a party may be reviewed on an appeal by that party after entry of final judgment in the main action, or, at the discretion of the court of appeal, may be reviewed upon petition for an extraordinary writ."

to compel arbitration are appealable under section 1294, subdivision (a).  In *Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 98 (*Henry*), the appellate court concluded that an order staying arbitration proceedings under section 1281.2 of the CAA should be treated the same as an order denying a petition to compel arbitration.  Under section 1281.2, if a court determines that a party to arbitration is also a party to litigation with a third party and there is a possibility of conflicting rulings on a common issue of law or fact, the court may order a stay of arbitration pending the outcome of the court action.  The *Henry* court reasoned, "an order staying arbitration is the functional equivalent of an order refusing to compel arbitration.  We note the advantages of arbitration include 'a presumptively less costly, more expeditious manner of resolving disputes.'  [Citations.]  It follows a party to a *valid* arbitration agreement has a contractual right to have its dispute with another party to the contract resolved quickly and inexpensively.  An order refusing to compel arbitration, if not reviewed immediately, would significantly delay arbitration and defeat its purpose.  The order would force the party seeking arbitration to proceed with a potentially lengthy and costly trial and, if dissatisfied with the result, appeal from the final judgment.  [Citation.]  By the time the Court of Appeal overturned the trial court's order, the value of the right to arbitrate would be significantly diminished by the delay and expense of litigation.  The Legislature's dissatisfaction with this result led it to enact section 1294, subdivision (a) which specifically authorizes an appeal from an order 'dismissing or denying a petition to compel arbitration. . . .'  (Recommendation and Study Relating to Arbitration (Dec. 1960) 3 Cal.Law Revision Com.Rep. (1961) G–1, G–60 & fn. 194.)"  (*Henry*, *supra*, 233

11

Cal.App.3d at pp. 99–100.) "[An] order staying arbitration is merely the flip side of an order refusing to compel arbitration and should be treated the same for purposes of appellate review." (*Id.* at p. 100.)

An interlocutory order denying a stay of court proceedings, however, is not an appealable order. (*Wells Fargo Bank, N.A. v. The Best Service Co., Inc.* (2014) 232 Cal.App.4th 650, 651–652 (*Wells Fargo*).) Denying a stay of court proceedings is not the functional equivalent of denying a petition to compel arbitration. (*Id.* at p. 654.) Similarly, an order that simply lifts a stay of litigation that was previously imposed under section 1281.4 pending arbitration is not an appealable order. (*Gastelum, supra,* 244 Cal.App.4th at p. 1023.)[3]

Courts have concluded that an order under section 1281.97 is the functional equivalent of denying a petition to compel arbitration, and therefore, appealable. (*Williams, supra,* 86 Cal.App.5th at p. 1065; *Gallo, supra,* 81 Cal.App.5th at p. 633.) We agree with *Williams* and *Gallo* on this point. An order under section 1281.97 finding the drafting party materially breached the arbitration agreement, allowing the employee or consumer to withdraw a claim from arbitration and proceed in court, is not

---

[3] An order denying a stay of litigation pending arbitration is reviewable, however, in connection with an appeal from another appealable order or judgment. (*MKJA, Inc. v. 123 Fit Franchising, LLC* (2011) 191 Cal.App.4th 643, 655.) Section 1294.2 of the CAA provides in pertinent part: "Upon an appeal from any order or judgment under this title, the court may review the decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the order or judgment appealed from, or which substantially affects the rights of a party."

simply an order lifting a stay of court proceedings.  An order under section 1281.97 finding a defendant materially breached the arbitration agreement and waived the right to arbitrate operates as a complete defense to enforcement of the parties' arbitration agreement, which is the functional equivalent of an order denying a petition to compel arbitration.  (*Williams, supra*, 86 Cal.App.5th at p. 1065.)  If not reviewed immediately, the order will significantly delay arbitration and defeat its purpose by forcing the party desiring arbitration to conduct a potentially lengthy, costly trial, and to appeal from the final judgment.  By the time the appellate court overturns the order, the value of the right to arbitrate would be significantly diminished by the delay and expense of litigation.

Principles of statutory construction support our conclusion. "[T]he Legislature is deemed to be aware of existing laws and judicial decisions in effect at the time legislation is enacted and to have enacted and amended statutes ' "in the light of such decisions as have a direct bearing upon them." ' [Citations.]" (*People v. Overstreet* (1986) 42 Cal.3d 891, 897.)  " '[W]hen the Legislature amends a statute without changing those portions . . . that have previously been construed by the courts, the Legislature is presumed to have known of and to have acquiesced in the previous judicial construction.' [Citations.]" (*People v. Atkins* (2001) 25 Cal.4th 76, 89–90.)

The Legislature was presumably aware of the case law construing orders that are functionally equivalent to denying a motion to compel arbitration to be appealable, but the Legislature did not include any language to alter the existing law or address appealability when it enacted section 1281.97. Moreover, after *Williams* and *Gallo* held that orders under

13

section 1281.97 are appealable as the functional equivalent of an order denying a motion to compel arbitration, the Legislature amended section 1294, subdivision (a), effective January 1, 2024, to add that "the perfecting of such an appeal shall not automatically stay any proceedings in the trial court during the pendency of the appeal." (Stats. 2023, ch. 710 (S.B. 365), § 1.)[4] By amending section 1294, subdivision (a), without changing the portion that had been construed to include orders under section 1281.97, the Legislature is considered to have acquiesced to the judicial construction. The Legislature chose instead to balance competing interests by providing, in the trial court's discretion,

---

[4] An analysis of Senate Bill 365 (SB 365) prepared for the Senate Judiciary Committee states the purpose of the bill as follows in pertinent part: "Current law allows corporate defendants to pause a consumer, government, or worker's case by simply filing an appeal of a trial court's denial of a motion to compel arbitration. Through this process, powerful corporations delay cases filed against them for typically one to three years. This bill allows consumers, governments, or workers to move their case forward if a company files an appeal, rather than waiting for years while the appeal is heard. SB 365 will level the playing field for consumers, governments, and workers who deserve to move their case forward when a company or employer violates their rights." (Sen. Com. on Judiciary, Analysis of SB 365 (2023-2024 Reg. Sess.) April 7, 2023, p. 6.)

14

for litigation to proceed in court while the order denying arbitration is reviewed on appeal.

Because we conclude the order under section 1281.97 is appealable, we consider whether the trial court properly applied section 1281.97.

## Preemption

Sohnen contends section 1281.97 does not apply in this case because it is preempted by the FAA. The first question we must consider is which statutory arbitration scheme applies to the parties' agreement. Sohnen asserts the FAA governs the arbitration agreement, including both the substantive and procedural provisions of the FAA, while Hernandez contends the procedures of the CAA apply, including section 1281.97. We conclude the parties selected the FAA in its entirety. Under these circumstances, section 1281.97 of the CAA does not apply and the order under section 1281.97 must be reversed. Even if we were to conclude that section 1281.97 applies, however, we would still reverse, because when an agreement falls within the scope of the FAA and does not expressly select California arbitration procedures, the FAA preempts the provisions of section 1281.97 that require finding a breach or waiver of the parties' arbitration agreement as a matter of law.

### A. General Application and Purpose of the FAA

The FAA was enacted to override judicial hostility to enforcing arbitration agreements. (*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*

15

(1989) 489 U.S. 468, 478 (*Volt*); *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339 (*Concepcion*).)  Section 2 of the FAA provides that an arbitration agreement within the scope of the FAA is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in [the FAA]."  (9 U.S.C. § 2.)[5]

"The FAA embodies a strong federal policy favoring arbitration." (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 761 (*Mendoza*).)[6]  The FAA does not bestow arbitration agreements with special status; it simply ensures arbitration agreements are as enforceable as other contracts.

---

[5] The FAA applies in "any maritime transaction or a contract evidencing a transaction involving commerce."  (9 U.S.C. § 2.)  The phrase "involving commerce" in section 2 of the FAA is broader than merely people and activities within the flow of interstate commerce; it extends the FAA's reach to the full limits of the Commerce Clause.  (*Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 279 and 273 (*Allied-Bruce*); *Muller v. Roy Miller Freight Lines, LLC* (2019) 34 Cal.App.5th 1056, 1062.)  "Employment contracts, except for those covering workers engaged in transportation, are covered by the [FAA.]" (*Equal Employment Opportunity Commission v. Waffle House, Inc.* (2002) 534 U.S. 279, 289.)

[6] The CAA sets forth a comprehensive statutory scheme governing private arbitration in California.  (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.)  The CAA similarly provides that a written arbitration agreement is valid, enforceable and irrevocable, except on grounds for the revocation of any contract. (§ 1281.)  "[U]nder California law, as under federal law, an arbitration agreement may only be invalidated for the same reasons as other contracts." (*Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 98.)

16

(*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 384 (*Cronus*).) A court interpreting an arbitration agreement within the coverage of the FAA must resolve ambiguities about the scope of the arbitration agreement in favor of arbitration in accordance with the federal policy favoring arbitration. (*Volt*, *supra*, 489 U.S. at pp. 475–476; *Cronus*, *supra*, 35 Cal.4th at p. 384.)

Sections 1 and 2 of the FAA contain substantive federal arbitration law that applies in federal and state court to any arbitration agreement within the scope of the FAA. (*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24; *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350–1351 (*DIRECTV*); *Cronus*, *supra*, 35 Cal.4th at pp. 387–390.) The FAA does not expressly preempt state law, nor does it reflect an intent by Congress to occupy the entire field of arbitration. (*Volt*, *supra*, 489 U.S. at p. 477.) When the FAA applies to an agreement, however, the substantive provisions of the FAA preempt state law to the extent that state law actually conflicts with the federal law or operates as an obstacle to accomplishing the purposes of the FAA. (*Ibid.*; *Cronus*, *supra*, 35 Cal.4th at pp. 387–390)

The FAA also contains procedural provisions. (*DIRECTV*, *supra*, 44 Cal.4th at p. 1351.) The procedural provisions of the FAA apply in federal court proceedings related to arbitrations. (*Ibid.*) By their terms, these procedural provisions of the FAA do not apply in state court. (*Ibid.*) The procedural provisions of California arbitration laws apply in California courts by default. (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 174 (*Valencia*).)

17

## B.  Choice of Law

Parties can avoid preemption by expressly agreeing to apply state law to their agreements, whether state substantive law, state procedural law, or both.  (*Volt, supra*, 489 U.S. at p. 476.)  "There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate."  (*Ibid*.)  When parties have agreed to arbitrate in accordance with state substantive and/or procedural law, the FAA does not preempt the state law to which the parties agreed.  (*Id*. at pp. 477–478.)

If parties expressly agree to apply the CAA, or agree to apply California law, including California's arbitration rules, then the state arbitration laws will not be preempted by the FAA. (*Volt*, *supra*, 489 U.S. at p. 470; *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1118 (*Rodriguez*).)  In other words, if the parties have agreed to apply section 1281.97, no discussion of preemption is required.

Similarly, if parties agree to apply the FAA's procedural provisions, rather than the procedures of the CAA, then the state arbitration procedures do not apply and there is no preemption issue.  (*Cronus*, *supra*, 35 Cal.4th at p. 394; *Valencia, supra*, 185 Cal.App.4th at p. 157.)  For example, in *Rodriguez*, some of the parties in a multiparty contract dispute agreed to arbitrate claims " '[p]ursuant to the Federal Arbitration Act.' "  (*Rodriguez*, *supra*, 136 Cal.App.4th at p. 1116.)  The FAA required the court to stay judicial proceedings until arbitration was completed, while the CAA allowed for a stay of arbitration.  (*Id*. at pp. 1117–

1118.)  The *Rodriguez* court concluded the agreement to arbitrate claims " 'pursuant to the FAA' " was broad, adopting all provisions of the FAA to govern the parties' agreement, and there was no contract provision suggesting the parties intended to apply California arbitration law.  (*Id.* at p. 1122.)  There was no ambiguity about the parties' intent for the substantive and procedural law of the FAA to govern their agreement, including the provisions of the FAA that compelled arbitration under the circumstances of the case.  (*Id.* at p. 1122.)

When the FAA applies to an arbitration agreement, it will, however, preempt state substantive law that conflicts with the policies of the FAA.  (*Concepcion*, *supra*, 563 U.S. at p. 341 [FAA preempts generally applicable contract defenses used in a manner to disfavor arbitration].)

### C.  Standard of Review and Principles of Contract Interpretation

When there is no parol evidence, or the parol evidence is not in conflict, the determination of whether an arbitration agreement is governed by federal law is a question of law concerning contract and statutory interpretation that we review de novo.  (*Rodriguez*, *supra*, 136 Cal.App.4th at p. 1117.)

"An arbitration agreement is governed by contract law.  It is construed like other contracts to give effect to the intention of the parties and the ordinary rules of contract interpretation apply."  (*Mendoza, supra,* 75 Cal.App.5th at p. 764.)  We examine the language of the parties' contract to determine which laws they intended to apply.  (*Cronus*, *supra*, 35 Cal.4th at p. 383.)  "The primary object of contract interpretation is to ascertain and

carry out the mutual intention of the parties at the time the contract was formed, determined from the writing alone, if possible. [Citations.] When the language of a contract is 'clear, explicit, and unequivocal, and there is no ambiguity, the court will enforce the express language.' [Citation.]" (*In re Marriage of Nassimi* (2016) 3 Cal.App.5th 667, 688 (*Nassimi*), footnote omitted.)

" 'The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' [Citation.] This means that '[c]ourts must interpret contractual language in a manner which gives force and effect to every provision' [citation, italics omitted], and avoid constructions which would render any of its provisions or words 'surplusage.' [Citation.] Put simply, '[a] contract term should not be construed to render some of its provisions meaningless or irrelevant.' [Citation.]" (*Nassimi, supra*, 3 Cal.App.5th at p. 688.)

### D. Application

The arbitration agreement in this case plainly states "this agreement is governed by the FAA." As in *Rodriguez, supra*, 136 Cal.App.4th at p. 1122, the statement in the arbitration agreement is broad, encompassing both the procedural and substantive provisions of the FAA. The agreement consistently refers to procedures contained in the FAA, such as allowing a party to seek appointment of an arbitrator pursuant to the FAA. In addition, both the arbitration agreement and the parties' stipulation expressly agree to apply the Federal Rules of Civil Procedure to the arbitration. There is no provision explicitly

20

referring to California law in the agreement. The parties selected the procedural provisions of the FAA and the Federal Rules of Civil Procedure, and therefore, the procedures of the CAA, including section 1281.97, do not apply. The order based on section 1281.97 must be reversed.

Hernandez contends the parties affirmatively incorporated California's arbitration law in their agreement, including section 1281.97, by stipulating that the arbitration "fully complies" with the requirements of *Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 91, and listing those requirements. We disagree. In *Armendariz*, the California Supreme Court held that discrimination claims under the California Fair Employment and Housing Act (FEHA) are arbitrable if the arbitration meets certain minimum standards of fairness allowing employees to vindicate their statutory rights, "including neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration." (*Id.* at p. 91.) *Armendariz* does not require parties to arbitrate under the CAA. The parties' representation that their arbitration would meet California's minimum requirements for a fair arbitral forum did not designate California arbitration law to govern the agreement.[7]

---

[7] We note that the parties' arbitration agreement permits a court to vacate or correct the arbitrator's award for an error of law. The procedural provisions of the FAA do not allow for parties to expand the scope of review by agreement. (*Hall Street Associates, L.L.C. v. Mattel, Inc.* (2008) 552 U.S. 576, 590.) California law allows parties to expressly agree to judicial review of the merits of an arbitration award. (*DIRECTV, supra,* 44

### E. Mandatory Findings Preempted by the FAA

Even if we were to conclude that section 1281.97 applies, however, we would still reverse the order in this case. When an agreement falls within the scope of the FAA and the parties have not expressly elected California law, we hold the FAA preempts the portion of section 1281.97 that requires findings of material breach and a waiver of the right to arbitrate as a matter of contract law.

Whether a state statute is preempted by the FAA depends on whether the statute conflicts with or obstructs the purpose of the FAA. (*Gallo, supra*, 81 Cal.App.5th at p. 637.) Section 2 of the FAA embodies an "equal-treatment" principle: " 'A court may invalidate an arbitration agreement based on "generally applicable contract defenses" like fraud or unconscionability, but not on legal rules that "apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." ' [Citation.]" (*Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, 650.) Under this principle, a state law that discriminates on its face against arbitration, such as barring arbitration of a particular type of claim, will be preempted by the FAA. (*Ibid.*; *Gallo, supra*, 81 Cal.App.5th at p. 637.) Similarly, state laws that impose requirements that discourage formation or enforcement of arbitration agreements are preempted. (*Gallo, supra*, 81 Cal.App.5th at p. 637.) "The United States Supreme

Cal.4th at pp. 1339–1340). On appeal, Hernandez has not relied on this provision as evidence that the parties intended to apply California's arbitration law to the agreement, and therefore, any such argument has been waived.

Court has frequently held that state laws invalidating arbitration agreements on grounds applicable only to arbitration provisions contravene the policy of enforceability established by section 2 of the FAA, and are therefore preempted." (*DIRECTV*, *supra*, 44 Cal.4th at p. 1351.)

State laws that regulate arbitration without undermining the FAA's substantive policies are not preempted. (*Gallo*, *supra*, 81 Cal.App.5th at pp. 638–639.) The FAA's primary objective is to honor the mutual intent of the parties by enforcing their arbitration agreement on its terms. (*Id.* at pp. 640–641.) "The second fundamental attribute of arbitration is its 'promise of quicker, more informal, and often cheaper [dispute] resolutions for everyone involved' [citation], such that the second objective of the FAA is to safeguard 'arbitration's fundamental attributes of speed and efficiency.' [Citations.]" (*Id.* at p. 641.)

We conclude, consistent with the federal district court in *Belyea v. GreenSky, Inc.* (N.D. Cal. 2022) 637 F.Supp.3d 745, 756, that section 1281.97 violates the equal-treatment principle because it mandates findings of material breach and waiver for late payment that do not apply generally to all contracts or even to all arbitrations. Under California contract law, defenses to enforcement of a contract are generally questions for the trier of fact and subject to doctrines such as substantial compliance, but section 1281.97 imposes a stricter requirement, mandating a finding of material breach and waiver as a matter of law in consumer and employment arbitration contracts, and making it harder to enforce arbitration agreements in those matters.

Several California courts have concluded section 1281.97 furthers the goals of the FAA by encouraging or facilitating arbitration. (*Gallo*, *supra*, 81 Cal.App.5th at p. 642; *Espinoza*,

23

*supra*, 83 Cal.App.5th at p. 783; *Suarez v. Superior Court* (2024) 99 Cal.App.5th 32, 42–43; cf. *De Leon, supra,* 85 Cal.App.5th at pp. 753–754 [describing preemption holding in *Gallo*]; *Hohenshelt v. Superior Court* (2024) 99 Cal.App.5th 1319, 1325–1326 [similar provisions of section 1281.98 further FAA's objectives].)  We respectfully disagree.[8]  The drafting party already has an incentive under California contract law to make timely payments in order not to waive the right to arbitrate.  Section 1281.97 limits the enforceability of certain types of arbitration agreements by allowing consumers and employees to elect to avoid arbitration even in cases of minor, inadvertent, or inconsequential delay.  Imposing a higher standard for enforcement of arbitration agreements in consumer and employee disputes is contrary to the FAA's policy to ensure arbitration agreements are as enforceable as other contracts.  In addition, section 1281.97 frustrates the FAA's objective of cheaper, more efficient resolution of disputes by increasing the overall cost of litigation and wasting resources already invested toward arbitration.  We conclude that unless the parties have expressly selected California's arbitration provisions to apply to their agreement, the FAA preempts the portion of section 1281.97 that dictates findings of material breach and waiver as a matter of law.

The order finding Sohnen materially breached the arbitration agreement and waived the right to arbitrate, allowing

---

[8] Justice Wiley dissented in *Hohenshelt,* noting that he would find section 1281.98 is preempted by the FAA because it singles out certain arbitration agreements for disfavored treatment.  (*Hohenshelt, supra*, 99 Cal.App.5th at p. 1328 (dis. opn. of Wiley, J.).)

Hernandez to withdraw from arbitration and proceed in court, must be reversed.

## Compliance With Court Order

Separate from the payment deadline imposed by section 1281.97, Sohnen contends the trial court erred by finding that Sohnen violated the trial court's order to pay arbitration fees and costs "on or before any deadline specified by the arbitrator." Sohnen argues that, in any event, vacating the stay of judicial proceedings was not an appropriate sanction for any alleged violation of the court order. We agree.

The trial court's order did not set a deadline for payment that was violated. Nor can the invoice from the arbitration provider be reasonably construed to have set a specific payment date: the invoice ambiguously states that it is "due upon receipt," and Sohnen had a reasonable time for payment from the point the invoice was received. Further, the court's order did not reasonably advise the parties of the consequences for violating any payment deadline. There is no substantial evidence that a deadline imposed by the court's order was missed, nor is there evidence justifying the sanction of vacating the stay of judicial proceedings.

## DISPOSITION

The September 1, 2022 order is reversed. Appellant Sohnen Enterprises is awarded its costs on appeal.

CERTIFIED FOR PUBLICATION.

MOOR, J.

I concur:

KIM, J.

Massiel Hernandez v. Sohnen Enterprises

B323303


BAKER, Acting P. J., Dissenting


I have doubts this appeal is properly before us at this stage of the proceedings—a point the Legislature can and should clarify. Assuming it is, the majority errs by going out of its way to articulate an alternative holding that, though dicta, conflicts with other Court of Appeal cases concluding Code of Civil Procedure section 1281.97 (section 1281.97) is not preempted by the Federal Arbitration Act. The majority's opinion rather obviously invites a grant of review from our Supreme Court; for now, I shall outline my disagreement with it.

I

First, appealability.

The Legislature and the Governor enacted section 1281.97 to remedy a problem: delayed justice. Specifically, the Legislature was persuaded that those responsible for paying arbitration fees (often the party that demands arbitration ostensibly for its expediency, among other things) were failing in some instances to timely pay those fees and thereby preventing an arbitration from proceeding promptly. To ameliorate what it saw as unnecessary delay, the Legislature passed a strong incentivizing statute: Section 1281.97 provides that if a party responsible for paying arbitration fees does not make payment within 30 days and thereby undercuts the touted greater speed of

arbitrations, the other party may—but is not required to—withdraw the matter from arbitration and proceed in court.

Section 1281.97 motions themselves can be decided by trial courts quickly because they ordinarily require a ruling that is as simple as simple gets. In nearly all cases, a trial court need only look at the arbitration invoice; look at when, if ever, the check (or, these days, electronic payment) to cover that invoice was sent; and then decide: timely, or not timely. If it is not, the court then gives the other party the option (among other options) of proceeding in court without delay—or so the Legislature would have thought.

In practice, however, some of these failure to timely pay fees cases are still dragging. Consider the facts here. The stipulation to arbitrate was filed in November 2021. The demand to arbitrate a consumer matter was apparently submitted to JAMS thereafter (the record does not reveal precisely when), and on April 7, 2022, JAMS notified defendant and respondent Sohnen Enterprises, Inc. (defendant) that a $1,750 filing fee was due upon receipt. It is undisputed defendant did not pay the fees within 30 days of the JAMS invoice; payment was made only later, on May 13, 2022. Under section 1281.97, plaintiff and appellant Massiel Hernandez (plaintiff) was therefore authorized to move, and did move, to lift the previously entered court stay and withdraw the matter from arbitration. The trial court granted that motion in September 2022, yet here we are: nearly two years after that ruling, and over two years after the demand for arbitration, with plaintiff's discrimination claims still waiting for resolution.

A judge-made doctrine is the reason why at least some of these cases are not moving forward. The usual rule, as the

2

majority recognizes, is that the right to appeal is "wholly statutory" and only orders denying or dismissing a petition to compel arbitration are appealable (§ 1294, subd. (a)).  But beginning in the 1990s, some Courts of Appeal decided orders that are the "functional equivalent" of the dismissal or denial orders referenced in section 1294, subdivision (a) are appealable too.  (See, e.g., *Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94.)  Relying on this authority, parties are noticing appeals from section 1281.97 orders, and those appeals are adding delays on top of the delays they have already caused by not timely paying arbitration fees.  (See, e.g., *Williams v. West Coast Hospitals, Inc.* (2022) 86 Cal.App.5th 1054, 1064.)

The majority's opinion follows *Williams* in holding defendant's appeal of the trial court's section 1281.97 ruling is proper under the "functional equivalent" doctrine even though this works at cross-purposes with section 1281.97's aim of speeding up arbitrations that are supposed to be speedy.  This seems wrong.  It is hard to believe the Legislature intended to permit immediate appeals from section 1281.97 orders and invite potential delay[1] when, as I have explained, section 1281.97

---

[1]  I say potential delay because a recent amendment to section 1294 may operate independently to reduce trial court delays.  (Stats. 2023, ch. 710, § 1 [adding language to section 1294, subdivision (a) that states, "Notwithstanding Section 916, the perfecting of such an appeal shall not automatically stay any proceedings in the trial court during the pendency of the appeal"].)  The effect of this amendment is not before us in this case, however, and I express no view on it here.  I do, however, add that trial court delays are not the only problem.  Even without such delays, allowing immediate appeals from section

3

determinations are customarily straightforward and the risk of error needing correction on appeal is de minimis.  Under these circumstances, one would think the Legislature would have relegated complaints about section 1281.97 rulings to appeals from a final judgment or other qualifying orders under section 1294.  (§§ 904.1, subd. (a), 1294, subds. (b), (c), & (e); see also § 1294.2 ["Upon an appeal from any order or judgment under this title, the court may review the decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the order or judgment appealed from . . ."].)

Though there is accordingly good reason to believe the Legislature did not mean to make the order before us an immediately appealable one, I concede the majority appropriately relies on principles of statutory construction that allow it to presume the Legislature was aware of, and acquiesced in, treatment of these section 1281.97 rulings as the functional equivalent of appealable orders.  But I hasten to add that the majority's extended discussion of the issue all but dares the Legislature to more directly declare its intent.  That, in my view, is an invitation the Legislature should accept.  Clarity is needed here, and if the Legislature did not intend to make trial court 1281.97 orders immediately appealable as the functional equivalent of a section 1294, subdivision (a) order, it should amend section 1281.97 (or section 1294) to so state.  For now, I will proceed on the understanding that the appeal is properly before us.

---

1281.97 orders adds to the docket of appellate courts on a piecemeal basis with no benefit, given the low risk of trial court error in deciding whether a payment was made within 30 days of when due.

# II

Second, preemption.

The majority holds section 1281.97 has no application to this case because the arbitration agreement between plaintiff and defendant states arbitration is to be governed by the Federal Arbitration Act. There are several features of the agreement that make it ambiguous in this respect, however, so the majority includes an alternative rationale to bolster its bottom-line decision to reverse. This alternative rationale—that section 1281.97 is preempted by the Federal Arbitration Act—creates a conflict with many other Court of Appeal decisions.[2] (See, e.g., *Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621.)

In my view, the arbitration agreement here is too ambiguous to conclude the Federal Arbitration Act fully applies. But rather than elaborate on that point, I shall spend my time on the majority's preemption conclusion because it is of greater doctrinal consequence.

Section 1281.97 is only preempted by the Federal Arbitration Act if it stands as an obstacle to accomplishing that act's purposes. (*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University* (1989) 489 U.S. 468, 477 ["The [Federal Arbitration Act] contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration. [Citation.] But even when Congress has not completely displaced state regulation in an

---

[2] The majority does not state whether it undertakes a categorical or an as applied preemption analysis. Because the opinion is written in broad terms, I proceed on the understanding it is the former.

5

area, state law may nonetheless be preempted to the extent that it actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'"].) *Gallo* explains the reasons why section 1281.97 is not such an obstacle.[3] The majority states it disagrees with *Gallo* and the other cases that similarly so hold, and as best I can tell, it gives a single reason to explain the disagreement. The reason is not convincing.

The majority believes section 1281.97 violates an "equal-treatment principle," which it articulates as a principle that arbitration agreements may be invalidated based on generally applicable contract defenses but not based on legal rules that apply only to arbitration or derive their meaning from the fact that arbitration is at issue. The majority asserts section 1281.97 offends this principle of equal treatment because it "mandates findings of material breach and waiver for late payment that do not apply generally to all contracts or even to all arbitrations." Discerning what treatment constitutes equal treatment, however, depends on a judgment about whether two things being compared are sufficiently alike to warrant the same treatment. Different treatment for contracts that have salient differences cannot offend the equal treatment principle.

---

[3]    Of course, the question of whether section 1281.97 is an obstacle to accomplishment of the Federal Arbitration Act's purposes must be considered at scale, meaning in the great many cases the statute was enacted to govern, not a select few. To draw an analogy, one does not decide whether strict notice of appeal timeliness rules enable prompt adjudication of challenges to trial court rulings by considering only those appeals that are dismissed because the notice of appeal was not timely filed.

One of the asserted benefits of arbitration—which the high court has explained the Federal Arbitration Act is meant to further—is the promise of faster dispute resolution. (*Epic Systems Corp. v. Lewis* (2018) 584 U.S. 497, 505.) The majority provides no reason to believe that the Legislature's specification of a 30-day timeframe for what constitutes a material breach and waiver for consumer and employment disputes that are supposed to be resolved by the faster means of arbitration is meaningfully inconsistent with what properly constitutes a material breach and waiver for contracts where time is of the essence—and that is the only category that matters for comparison purposes.[4] Nor has the majority provided any reason to think the Legislature was unjustified in believing that delays for nonpayment of arbitration fees were most prevalent and problematic in certain consumer and employment arbitrations.

I accordingly believe the weight of authority in this area is correct. Put simply, it is a real stretch—and a stretch too far—to

---

[4] The majority also appears to hint that the Legislature has somehow impermissibly invaded a judicial function to determine what constitutes "minor" or "inadvertent" delay. If that is the unstated concern, there are two responses. First, I am aware of no law that precludes the Legislature from doing so, and the Legislature should have some latitude to respond to identified problems with dispute resolution mechanisms. Second, outlier cases are not the focus of a categorical preemption analysis. Even if a few matters are removed from arbitration in a case of a minor or inadvertent delay, it is still that case that section 1281.97 overall ensures arbitrations proceed more quickly.

say the Federal Arbitration Act is offended by a state law that requires prompt payment of arbitration fees.


BAKER, Acting P. J.